[Filed April 11, 1887.]

## D. P. THOMPSON, RESPONDENT, *v.* JOSEPH HOLLADAY ET AL., APPELLANTS.

BEN HOLLADAY INSTITUTED A SUIT against Joseph Holladay to have certain deeds given by the former to the latter declared mortgages, which was done, and a decree rendered fixing the amount of indebtedness of the latter to the former at $315,492.46. During the pendency of the suit, Thompson loaned Ben Holladay six thousand dollars, and took from Holladay a chattel mortgage on certain shares of stock. At the time of this transaction, Thompson was receiver in the suit of *Ben* v. *Jos. Holladay*, and as such receiver had the shares of stock in his own hands. Subsequent to the rendition of the final decree of the Supreme Court, and after the suit had been remanded to the Circuit Court, the parties to the suit entered into a stipulation whereby certain property was released from the lien of the decree and applied to the payment of the debts of Ben Holladay. Various deductions were made by creditors of Holladay, and this time of the redemption of said property extended from ninety days to three years. This suit was brought to foreclose the mortgage held by Thompson, and to restrain the receivers appointed in the Holladay suit, and who were still acting and in possession of various property, including the mortgaged stock, from selling said stock to satisfy any other claim against Holladay, until all other property covered by the decree had been sold. *Held*, that the parties to the suit of *Holladay* v. *Holladay* had the right to make any stipulation they might desire, releasing a part or the whole of the property affected by the decree. That such stipulation did not, by keeping the property in the hands of the receivers, operate to hinder or delay creditors, in violation of the statute in regard to fraudulent transfers. That the Circuit Court had the right to continue the receivers in office, and their right to the custody of the property and the policy of the act could not be inquired into in a collateral proceeding. That the court, in the case of *Holladay* v. *Holladay*, had

the right, after having found the deeds in question to be mortgages, to direct that the property be sold to satisfy the indebtedness, but could not thereby change the time or terms of redemption as established by statute. That any person having a claim against Holladay is entitled upon obtaining leave of the Circuit Court, to maintain suit against the receivers in their official capacity, in order to affect property under their control, and that the property in the hands of the receivers would not be affected by an action against Holladay alone. That Thompson could not lawfully, while acting as receiver, appointed by the court, take a mortgage from a party in the proceeding upon property in his custody as such receiver. That Thompson was entitled to a decree for the amount of his debt against Ben Holladay personally, and the receivers in their official capacity. (LORD, O. J., specially concurring.) Thompson could not, while receiver, become a mortgagee of property in his possession as such receiver.

APPEAL from a decree of the Circuit Court for the county of Multnomah.

*Jas. K. Kelley,* and *C. E. S. Wood,* for Respondent.

1. An insolvent debtor has no right, pending a creditor's suit, to prefer one creditor by giving him a mortgage or assignment. But where the receiver is appointed simply to preserve the estate *pendente lite,* and not for an equitable distribution of the assets among the creditors, a creditor may enforce a demand by suit. (*Ellicot* v. *U. S. Ins. Co.* 7 Gill, 307.)

2. There was no reason why Holladay could not make the mortgage to Thompson while the latter was receiver.

3. Joseph Holladay should be required to exhaust all other assets upon which he has a lien before resorting to the 1,194 shares of stock pledged to Thompson. (1 Story on Equity Jurisprudence, §§ 1226–1414.)

4. The Circuit Court had no authority to remove Thompson or appoint Holladay and Weidler receivers. Such proceedings were *coram non judice* and void, because no decree was entered by the Circuit Court as ordered by the mandate of the Supreme Court, and as required by subd. 2, of section 536 of the Code. It was the duty of the Circuit Court simply to enforce the decree of the Supreme Court. (Code, § 536.)

*Dolph, Bellinger, Mallory & Simon, H. Y. Thompson,* and *Strong & Strong,* for Appellants.

1. The title of the stock in question was in the receiver, not

in Holladay. (*Barry* v. *Briggs*, 22 Mich. 200; High on Receivers, § 447, and note 2.)

2. A receiver is not allowed to purchase property connected with the receivership. (High on Receivers, §§ 193, 194, n. 1; *Sheldon* v. *Rice*, 30 Mich. 300; *C. C. Co.* v. *Sherman*, 30 Barb. 565; 1 Perry on Trusts, 205.)

3. The rendition of a final decree does not necessarily terminate the functions of the receiver. (High on Receivers, §§ 833, 834; 1 Barb. Ch. 346.)

4. The validity of a receiver's appointment cannot be assailed collaterally. (High on Receivers, § 470; *Whittles* v. *France*, 74 N. Y. 456; *Russel* v. *A. E. Ry. Co.* 3 Macn. & G. 115.)

5. The appointment was valid and regular. (33 Barb. 327; *Powell* v. *Waldron*, 89 N. Y. 328; High on Receivers, § 470; *Oakley* v. *Becker*, 5 Cowan, 454; *Hooper* v. *Winston*, 23 Ill. 353.)

6. A party to a suit may be a receiver. (2 Daniel's Chancery Practice, 1424–1429, n.)

7. The property being in the hands of the receiver appointed by the State court, in a cause where it had jurisdiction, the only proper course for respondent was to represent his claim to that court. The inference of another court in another proceeding is vain and nugatory. (*Wiswall* v. *Sampson*, 14 How. 67.)

THAYER, J. — The respondent commenced a suit in said Circuit Court against a number of defendants, including the appellants herein, to recover a decree against the defendant Ben Holladay, on account of moneys advanced by the former to the latter, and interest on the same at the rate of ten per cent per annum, from the time the advances were made, and to foreclose a chattel mortgage upon 1,194 shares of stock of the Portland Street Railway Company given by the said Ben Holladay to the respondent, to secure the said advances, said stock then being held and in the possession of the respondent as receiver in the suit of *Ben Holladay* v. *Joseph Holladay;* also to restrain the appellant Joseph Holladay from selling said shares of stock under a decree of this court, directing the sale of certain property, including said shares

of stock, until he should have first sold all the other property referred to in the said decree, or a sufficient portion thereof to satisfy the sum of $315,492.46, decreed to be due from said Ben Holladay to said Joseph Holladay.

Answers to the complaint in the suit were filed by the appellants, and a reply to the new matter therein contained was filed by the respondent. Subsequently thereto, the respondent filed a supplemental complaint. The alleged mortgage bears date November 11, 1884. It recites the execution by the said Ben Holladay of a promissory note for the sum of four thousand five hundred dollars, bearing even date with the mortgage, payable to the order of the respondent, on or before the first day of January, 1886, with interest thereon at the rate of ten per cent per annum until paid, containing an agreement to repay all further advances that may be made by the respondent to said Holladay, but which were not to exceed five hundred dollars per month, from and after the first day of January, 1885, to be repaid at the time the principal sum became due, with a like rate of interest, and containing also a provision that the same should become due and payable upon the decision being made of the said suit of *Ben Holladay* v. *Joseph Holladay*, the suit in which the decree was given, if said decision should be rendered before January, 1886. Said mortgage contained a granting clause, granting the said property for the purpose of securing the payment of the said note, and advances that might be further made by the respondent, with the interest accruing thereon. The note referred to in the mortgage is also set out in the complaint; and it is further alleged in the complaint, that in pursuance of its terms said respondent, after the execution thereof, loaned and advanced to the said Ben Holladay each month inclusive, from December, 1884, to October, 1885, excepting September, the sum of five hundred dollars; and one thousand dollars in the month of November of the latter year, making six thousand dollars; and that the amount thereof, with the principal sum mentioned in said note, aggregating ten thousand five hundred dollars, with accrued interest, was due and no part had been paid. It is also alleged in the complaint that the said decree of this court, in the

case of *Ben Holladay* v. *Joseph Holladay*, was given on appeal from a decree of said Circuit Court; that it was entered on the twenty-ninth day of June, 1886, and adjudged and decreed that the said Ben Holladay was indebted to the said Joseph Holladay in the sum of $315,492.46, and that certain conveyances, assignments, and transfers of real and personal property, made by and under the direction of said Ben Holladay to the said Joseph Holladay, were decreed to be mortgages upon said property to secure the payment of said indebtedness; that the said Ben Holladay had an equity of redemption in all of said property, and that if he failed to pay the said sum of $315,492.46, together with interest, costs, and disbursements, then and in that case, the receivers appointed in said suit should, as directed by the attorneys of said Joseph Holladay, sell the same to satisfy the said debt, and the balance, if any, pay over to the said Ben Holladay; that the mortgaged property referred to in said decree was more than necessary to pay the indebtedness, and that the lien thereof was prior to the respondent's mortgage; that the respondent had no other lien or security for the payment of said ten thousand five hundred dollars, and upon which facts the relief that the said Joseph Holladay first exhaust the other property to obtain satisfaction of his indebtedness, before selling said shares of stock, is claimed.

It is also alleged in the complaint that since said decree was rendered by this court in the suit of *Ben Holladay* v. *Joseph Holladay*, George W. Weidler and said Joseph Holladay were appointed receivers therein, and have the possession and control of the said mortgaged property, and were, by order of the judge of said Circuit Court, directed to be made parties to this suit. There were two several answers to the original complaint filed by the appellants; one on behalf of Joseph Holladay and George W. Weidler, in their character as receivers, and the other on behalf of Dolph, Bellinger, Mallory & Simon, and Williams, Durham & Thompson, who obtained leave of the court to intervene in the suit. The answer of Holladay and Weidler shows that on the twenty-seventh day of September, 1886, said Circuit Court made and entered an order wherein certain property,

described in the decree in said suit of *Ben Holladay* v. *Joseph Holladay et al.*, was released and discharged from the lien of said decree, and was ordered to be transferred by them to George W. Weidler as trustee, as provided in the stipulation in the case theretofore filed; that on the said twenty-seventh day of September, 1886, it was so transferred, and said receivers had no custody or control of it as such receivers. The property so released is the stock in the Oregon Real Estate Company, the stock in the Willamette Real Estate Company, divers tracts of land, town property, and a balance due from Halsey stock in the Willamette Real Estate Company of $1,328. Said answer contains an averment that the amount then due Joseph Holladay, and secured by the lien of said decree upon the property therein described, excepting that which had been so released, was $346,686.46, with interest thereon from the tenth day of July, 1886; and that in case it should become necessary to sell said property to satisfy said decree, the stock in the Oregon Real Estate Company and in the Willamette Real Estate Company could not be sold by the receivers and the court; and that it is neither practicable nor just to order the sale of said 1,194 shares of the stock of the Portland Street Railway Company to be made after the sale of the other stock mentioned. As a further defense to the suit herein, said Holladay and Weidler alleged, as new matter, that on the eleventh day of November, 1884, at the time of the alleged execution of the note and mortgage referred to in the complaint, the respondent was the only appointed, qualified, and acting receiver of the said Circuit Court in said suit of *Ben Holladay* v. *Joseph Holladay et al.*, then regularly pending in said court, and as such receiver, then had the custody, control, and possession of said 1,194 shares of the capital stock of the Portland Street Railway Company; and it had been assigned to him and was held in his name as such receiver, and not otherwise; and they averred that he could not in law or equity acquire the interest in said stock claimed in said complaint.

The answer of the other appellants, Bellinger, Dolph, and others, shows that they are and were attorneys at law; were employed as such by the said Ben Holladay to attend to his law

business long prior to the date of said note and mortgage; that they consisted of two separate firms, said Dolph, Bellinger, Mallory, & Simon composing one, and at the time of the employment and transaction of the business as such attorneys, the said Williams, Durham & Thompson composing the other; that the said Ben Holladay, on the fifteenth day of October, 1883, engaged said firms, and that on the thirteenth day of January, 1885, he agreed with them that, to secure their compensation for said services under said contract of employment, he, said Holladay, would, from time to time, as said services should be performed, transfer, convey, and assign to the said law firms, or to some member thereof for the benefit of all, such property, real and personal, as might be agreed upon, which said property when so conveyed should be held as security for the compensation for such services and advances by said firms to said Holladay; that in pursuance of said understanding and agreement, said Ben Holladay did, on the eighteenth day of April, 1885, assign and transfer to said George H. Williams, George H. Durham, and H. Y. Thompson, 550 shares of the capital stock of the Oregon Transfer Company, and 1,200 shares of the capital stock of the Portland Street Railway Company; that in pursuance of said understanding and agreement, said Ben Holladay did, on the twenty-ninth day of August, 1885, assign and transfer to the appellant C. B. Bellinger, 5,331 shares of the capital stock of the Willamette Real Estate Company, 10,000 shares of the capital stock of the Oregon Real Estate Company, 675 shares of the capital stock of the Willamette Steam Mills Lumbering and Manufacturing Company, and 550 shares of the stock of the Oregon Transfer Company; that in pursuance of the said understanding and agreement, said Ben Holladay did, during the month of October, 1885, and prior to the commencement of any of the actions in this State, mentioned in the complaint, in which complainants obtained their judgments, duly convey to the said Bellinger and Thompson all the real estate described in complainant's bill of complaint; that on the second day of December, 1885, the said law firms had a settlement and agreement with said Ben Holladay, in which it was mutually agreed that

there was due and owing to the said firms, on account of said services and advances by them, the sum of one hundred and fifty thousand dollars, which sum said Ben Holladay then agreed to pay, together with the further sum of ten thousand dollars, due to said Dolph firm upon other accounts; and it was then further agreed between said firms and said Ben Holladay, that the said conveyances, transfers, and assignments should operate as, and be held to secure the payment of the said sums so ascertained and agreed to be due them from the said Ben Holladay, from which facts they claimed a lien upon said property prior to the lien of the respondent.

It is alleged in said answer that long prior to the dates and times mentioned in the complaint herein, the said Ben Holladay was largely indebted to August Belmont, of New York, the Mutual Life Insurance Company of New York, and S. M. L. Barlow, of the same place; that on the tenth day of July, 1886, the amount so due to said Belmont was about one hundred and fifty-four thousand dollars, the amount so due said insurance company was about one hundred and twenty-four thousand dollars, and the amount so due S. M. L. Barlow was about five thousand two hundred dollars; that said Belmont and Barlow had duly recovered judgments upon their demands in said Circuit Court, and said insurance company had an action pending upon its said demand in the Circuit Court of the United States for the district of Oregon; that said judgments and suit were being prosecuted with the view of causing it to be judicially decreed that said several demands constituted a lien upon said property prior to that of said Joseph Holladay. It is further alleged therein, after a statement of the result of the suit in this court, wherein Ben Holladay was respondent and said Joseph Holladay was appellant, that on the said tenth day of July, 1886, within said ninety days, referring to the ninety days mentioned in the decree in said suit in which Ben Holladay was allowed to redeem said property, said Ben Holladay and Joseph Holladay entered into an agreement, whereby it was provided that Joseph Holladay would forbear to foreclose his said lien until the expiration of three years from the date thereof; that as

one of the considerations for such forbearance, it was provided that said Ben Holladay should adjust the demands of said insurance company, and said Belmont and Barlow, and of the said law firms, so that there should be no claim of priority on account of either of said demands over the lien and claim of said Joseph Holladay; and to enable said Ben Holladay to carry said agreement into effect on his part, it was provided that upon the assent of the said creditors to said agreement, the following portions of said property should be released from the lien of the said mortgage and decree of said Joseph Holladay: all of the stock of the Oregon Real Estate Company, the stock of the Willamette Real Estate Company, thirty-one acres of land at the car shops in East Portland, six lots in the town of Cornelius, in Washington County, Oregon, three blocks in the town of McMinnville, Oregon, one hundred and eighty-five acres of land in Thurston County, Washington Territory, and the St. Joseph Hotel property in the said town of Cornelius; and that the same should be conveyed to George W. Weidler in trust for the payment of the said debts and demands of the said Belmont, Barlow, the Mutual Life Insurance Company, and the said two law firms; and it was further provided that the said creditors should have a lien upon all the balance of said property, second to that of said Joseph Holladay, and that the said agreement should have the effect of a stipulation for an order from the court directing the release and transfer mentioned. It is further alleged in the said answer that within said ninety days, and on the thirtieth day of August, 1886, the said creditors duly assented to the said conditions of the said agreement, and subordinated their several claims and demands to that of the said Joseph Holladay as provided in the said agreement, and joined in and became parties thereto. It further appears from said answer that said agreement was carried out, and that, in consideration thereof, the said insurance company, Belmont, Barlow, and the two law firms entered into an agreement with the said Ben Holladay, whereby it was agreed that he would pay, and that they would accept, in full satisfaction of their said several debts and claims, the following sums respectively: —

| | |
|---|---|
| Belmont | $41,000 |
| The Insurance Company | 30,000 |
| Barlow | 5,200 |
| Williams, Durham & Thompson | 37,500 |
| Dolph, Bellinger, Mallory & Simon | 47,500 |

Which sums should be payable in three years from said date, with interest at the rate of six per cent per annum; that thereupon said Ben Holladay, and Esther, his wife, in accordance with the terms of said agreement of July 10, 1886, executed to said Weidler their deed of trust conveying said property to him; that he accepted the trust imposed and entered upon his duties; that said agreement and stipulations relating to the affair, entered into between said parties, were duly filed in said suit of *Ben Holladay* v. *Joseph Holladay et al.,* and thereupon, on the twenty-seventh day of September, 1886, an order was made by said Circuit Court directing that the said property, which had been agreed to be transferred in trust, as before mentioned, be released from the custody of the receivers theretofore appointed in said suit, and be transferred and assigned to the said Weidler, in trust, for the purpose of carrying out the said agreement and paying the said debts and demands; and that in pursuance of said order, the said receivers did, on the ——— day of ———, 1886, transfer, assign, and set over to the said Weidler the said shares of stock of the Oregon Real Estate Company for the purposes before mentioned. And it is alleged in the said answer that the respondent had due notice, on the eighteenth day of April, 1885, of the said assignment and transfer to said Williams, Durham & Thompson, and that all the advances made by him to said Ben Holladay after that date were made with notice thereof; and that on the first day of September, 1885, the respondent had notice of the said assignment to said Bellinger, and that all the advances so made by him after that date were made with full notice thereof. The respondent in his reply to the said answer denied any knowledge or information sufficient to form a belief as to the transfers to said Bellinger and Thompson of the real estate, or of the settlement or agreement with said Ben Holladay alleged in the answer of Dolph and others, or of the

agreement to pay the said ten thousand dollars, or as to whether said conveyances, transfers, and assignment should operate as, or be held to secure the payment of the said sums alleged to have been ascertained or agreed to be due to them from said Ben Holladay; denied the notice alleged in said answer, or that the said advances made by respondent to said Ben Holladay were made with notice or knowledge on his part of the alleged assignments and transfers.

In the supplemental complaint, the respondent alleged that prior to the determination of the suit of *Ben Holladay* v. *Joseph Holladay et al.,* in said Circuit Court, and on the fourteenth day of May, 1884, he was appointed receiver therein; that he was such receiver on the twenty-ninth day of June, 1886, when said suit was finally determined in this court, as before alleged; that instead of complying with the terms of the decree and mandate of this court, said Ben Holladay and Joseph Holladay colluded together to have the respondent removed from the receivership, and to have Joseph Holladay and George W. Weidler appointed receivers therein in his stead, for the purpose of hindering, etc., respondent and other creditors of Ben Holladay in the collection of their debts; and that the agreement of July 10, 1886, between Ben and Joseph Holladay, set out in the Dolph-Bellinger answer, was made in furtherance of that object. A copy of the said agreement marked "A" is attached to said supplemental complaint and referred to therein. The respondent claims that the appointment of said Joseph Holladay and George W. Weidler was without any authority of law, and as additional relief, demands that their appointment be declared null and void. The defendants in the suit filed an answer to the supplemental complaint, but the facts are sufficiently indicated in the pleadings already referred to, and the exhibits filed therewith, for the purpose of considering the merits of the case. It appears that after the issues were made up the parties stipulated as follows:—

1st. Exhibits "A" and "B" hereto attached are true and correct copies of the original papers of which they purport to be copies, bearing correct dates and genuine signatures of the parties purporting to have executed them, and correct dates and genuine

signatures to the acceptances of service and proofs of service indorsed thereupon.

2d. That the papers attached to the complaint and answers in this suit are correct and true copies of the originals of which they purport to be copies, and that said original papers were duly and properly executed by the parties purporting in said copies to have executed them, and each of them, and that the purported dates thereof are the correct and true dates of the execution of said papers respectively.

3d. That exhibit "C," hereto annexed, is a true and correct copy in all respects of the original mortgage upon which this suit is brought.

4th. That said Ben Holladay did receive from said plaintiff the several sums of money at the dates, and to the amount set forth in the complaint.

5th. That the reasons stated on page 3 of the supplemental answer for increasing the amount of said decree of the Supreme Court are correct statements of the facts relating thereto.

6th. That Ben Holladay was without means to redeem the said property as provided in the decree of the Supreme Court, and that the allegations of the supplemental answer on pages 3, 4, 5, 6, and 7 are true and correctly stated.

And before the decree of said Supreme Court, a decree had been rendered in the Circuit Court of the United States for the district of Oregon in favor of George C. Hickox, and against said Ben Holladay, decreeing that the said conveyances of Ben to Joseph Holladay were fraudulent and void as to said Hickox, a creditor of Ben Holladay, which said decree was for the sum of $38,975.86.

7th. That no order discharging said receivers has been made, and they are now in the possession of said property, exercising the duties of receivers, by virtue of and in compliance with the said order of their appointment.

8th. That after the decree of the said Supreme Court, the mandate of said court containing said decree was presented to the Circuit Court, and an order made directing the entry thereof in the journals of said court, and the same was entered and docketed, but no further decree was entered.

9th. That this court, and if this case shall be appealed, then the Supreme Court, may refer to its record of said decree for the purpose of ascertaining its provisions, for the purpose of trying this suit.

The case was submitted to the said Circuit Court upon these various facts, and upon which said court granted the respondent the relief claimed in his complaint, from which determination this appeal to this court was taken. From the facts agreed upon in the said stipulation, and the matters referred to therein, the following may be deduced as a fair outline of the facts of the case: Ben Holladay being indebted to Joseph Holladay in a sum of money, conveyed, and caused to be conveyed to him, all his property interests in Oregon by deeds of conveyance, absolute in terms. Ben Holladay subsequently claimed that such conveyances were made for the purposes of securing the indebtedness, while Joseph assumed the attitude of an absolute purchaser of the property. The former commenced a suit in said Circuit Court against the latter to have the transaction declared a mortgage, and to ascertain the amount of the indebtedness, and applied for and procured the appointment by said Circuit Court of a receiver in the suit. After the appointment of one receiver and his resignation of the trust, the respondent was appointed receiver therein, and was such receiver when he advanced the money to said Ben Holladay, took from him the mortgage in question, and made the further advances referred to in the complaint herein; that the said Circuit Court having decreed that said conveyances were mortgages, and that the indebtedness they were given to secure amounted to a certain sum, Joseph Holladay took an appeal from the decree to this court, where the suit was tried anew, and the same conclusion reached as to the transaction being a mortgage; but a larger amount of indebtedness was found to exist in favor of the said Joseph Holladay, and against the said Ben Holladay, than that determined by the said Circuit Court. It was adjudged and decreed by this court, that in case Ben Holladay failed to redeem the property within ninety days, the receiver should at once pay over to Joseph Holladay all moneys in his hands as such receiver, and deliver to the sheriffs of the

respective counties in which the property was situated, all of the property to be sold by such sheriffs upon execution. This decree was remanded to the Circuit Court and entered therein, whereupon the said agreement of July 10, 1886, was entered into, which was sanctioned and carried out by the said court, so far as any action of the court was provided for therein. Exhibit "A," referred to in said stipulation, is the agreement mentioned in the Dolph-Bellinger answer, wherein Belmont, the insurance company, Barlow, and the two law firms agreed to accept the lesser sums in settlement, satisfaction, and discharge of their respective claims against the said Ben Holladay; and exhibit "B," referred to therein, is the deed of transfer from Ben Holladay and wife to Weidler of the trust property mentioned in said answer. Under these various proceedings, it is difficult to understand the legal status of the property Ben Holladay had an interest in at the time he commenced the suit against Joseph Holladay. Both parties concede that the appointment of a receiver in the outset was regular, and that it had the effect to wrest the property from the control of the parties, and place it in the custody of such receiver, and that it remained in that condition until the decree was rendered in the court, and entered upon the journals of said Circuit Court.

*Legal effect of stipulation.* The respondent's counsel, however, claim that when the decree was so entered, the Circuit Court had no authority except to enforce its terms and conditions, and that when the ninety days expired and no redemption of the property had been had, the receiver must turn it over to the sheriffs referred to, and his authority was then terminated. But when the mandate was sent down, and the decree entered in the Circuit Court, it became the decree of that court, which was then invested with the same authority over it as though it had been an original decree of that court. No court has a right to alter its decrees after the expiration of the term at which they are pronounced, unless consented to by both the parties in interest. A party in whose favor a decree is given may consent to its modification. He could cancel it if inclined to do so. Joseph Holladay had the same right to extend the time for

redemption of the property he had to extend the time of payment of a promissory note owned by him. I know of no power whatever that could have prevented him from doing that, so long as it did not affect the rights of other parties. He had the right, of course, to rebate any portion of his claim, or lessen the rate of interest, or relinquish his lien upon the property, or any part of it. Upon the other hand, Ben Holladay had the same right to obtain as favorable terms in regard to the matter as he was able to. If, by conceding what Joseph Holladay claimed to have been an error against him in the computation by the court of the indebtedness, and agreeing to rectify it, he could gain an extension of the time for redemption of the property, a reduction of the rate of interest, and a release of a portion of it from the lien thereon, and thereby avoid a sacrifice of the property, what possible wrong could it be? Counsel for the respondent contend that his rights and that of other creditors are greatly impaired in consequence of the property remaining so long in the custody of the court, and suggests that it operates to delay creditors in violation of the provisions of the statutes relating to fraudulent transfers. In the first place, it does not delay creditors within the sense and meaning of that statute. They may bring and maintain suits against the receiver in his official capacity, almost as a matter of course, and obtain judgments against him binding the estate, subject to the equities of other parties interested in it. They are compelled, it is true, to obtain leave of the court, having custody of the property, to bring their suits against the receiver, but that requirement is imposed to prevent vexation and confusion; and they may maintain suits against the debtor in any forum as a matter of right; but the judgment recovered in such case will not bind the receiver, or compel him to do anything in aid of its enforcement. In the second place, the transaction was conducted mainly by attorneys of this court of established reputation and known integrity; it bears upon its face the impress of an honest, prudent, and intelligent affair, and was submitted to and received the sanction of the Circuit Court. To conclude, under such circumstances, that it was actually or constructively fraudulent would be effrontery. I am

not willing to listen to any suggestion indicating that the able and respectable counsel who managed the business might be knaves, or that the court that approved of it was possibly corrupt, unless the transaction itself bears unmistakable evidence that it was wrong, something about it tending to show that it was "conceived in sin, and brought forth in iniquity." It might have been impolitic to continue the receivership after the decree was entered in the Circuit Court, but it was just as necessary to have a receiver then as in the beginning.

*The proceeding cannot be attacked collaterally.* And besides, this court, in this case, has nothing to do with the policy aspect of the question; we cannot review the matter in a collateral proceeding further than to determine whether or not it was a void act. If the Circuit Court had power to continue the receiver and it did so, this court cannot interfere with the exercise of the power, except in a direct proceeding to review it.

*Jurisdiction to order foreclosure.* The respondent's counsel claim, also, that the part of the decree in *Ben Holladay v. Joseph Holladay*, which specified the time for the redemption of the property, and directed the sale of it in case it were not redeemed, should not have been made; that when the transaction in such a case is shown to be a mortgage, and the amount of indebtedness secured is ascertained, the parties should be left to pursue the usual remedy of foreclosure and sale provided by law, in case of liens upon real and personal property. The suggestion is a very important one, in view of the fact that we have no such rule in our practice as a strict foreclosure, and a sale does not affect the right of a subsequent encumbrancer, unless he is made a party to the foreclosure proceeding. I do not believe that the specification of a definite time in which to redeem the property affected the right to redeem thereafter. It only suspended proceedings to foreclose the lien during that period. Ben Holladay did not obtain the right to redeem from the court but from the law. The court determined merely that the conveyances of the property were intended to secure the payment of the indebtedness; that they were mortgages, consequently all the incidents of a mortgage applied to them. They simply constituted in law a

XV. OR.—4.

lien or charge upon the property, and the statute points out the mode in which "a lien upon real or personal property, other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed." (Civ. Code, § 410.) A sale of the property in accordance with the decree of the court and the expiration of the statutory time for redemption would probably have barred the right. I think this court has power to decree a sale in such a suit, and that it would have the effect, when enforced, to cut off the right of redemption, unless made within the period, and in the manner provided in the Code. It seems to have been so held in Iowa, where a similar statute is in force. In *Herring* v. *Neeley*, 43 Iowa, 157, the defendants set up as new matter: "That being indebted to plaintiff, they conveyed to him certain land for security, which he obligated himself by bond to reconvey upon payment of the indebtedness secured, and prayed that a decree be entered declaring said deed to be a mortgage, and requiring plaintiff to treat it as such, and for such other and further relief as defendants might show themselves justly entitled." The District Court of the State declared that the deed and bond for the land constituted a mortgage, and foreclosed the same, ordering the land to be sold upon special execution for the amount of the judgment. The Supreme Court upon appeal affirmed the judgment. Beck, J., in delivering the opinion of the court, said: "It is first insisted that the court erred in rendering the decree foreclosing the mortgage, because no such claim of relief is made in defendants' answer. But they do claim such relief as under the rules of equity they are entitled to recover. Their prayer for relief is general. After the court had found the deed and bond operated as a mortgage, it may have found that equity required, in order to protect the rights of one or both of the parties, the mortgage to be foreclosed. One ground for such an order would be the avoidance of multiplicity of actions. Others based upon the evidence may have appeared. We cannot hold the decree to be erroneous, in the absence of some positive showing of error. . . . . The pleadings, as we have seen, authorized the court to foreclose the mortgage when the deed and bond were found to constitute such a security, if

equity so required." The principle seems to be that the court, having jurisdiction of the subject-matter for one purpose, will do complete justice in the case between the parties when equity requires it. I notice, also, that the same practice has been recognized in some of the other States. (*Hoffman* v. *Ryan,* 21 W. Va. 415; *Loving* v. *Milliken,* 59 Tex. 423.) I can see no objection to such a course where the parties, as they did in *Holladay* v. *Holladay,* consent to it. There can be no question, it seems to me, but that the court had jurisdiction to order a sale after finding that the transaction was a mortgage. If it had jurisdiction for the one purpose it could certainly exercise it for the other. The court should no doubt have directed that an inquiry be made as to whether any other persons had liens upon the property, and if so, to order them brought in, and that the amounts of their claims be ascertained so that they could be discharged from the proceeds of the fund. The suit was in the nature of a bill to redeem, but a strict foreclosure not being allowed, a sale being required by positive law in order to bar the equity of redemption, the remedy has to be changed so as to meet the new condition of affairs. Courts of equity have always been able to adapt their remedies so as to do justice, and I have no doubt but that they still are.

Under the views indicated, it follows that the decision of this court in said case of *Holladay* v. *Holladay,* concluded the rights of the parties in the decree no further than the law, as declared by the court in the case, established them under the proof submitted at the hearing; that when the mandate was transmitted to the Circuit Court and entered upon the journals thereof, the parties were not deprived of the right to agree upon an alteration of the terms and conditions of the decree, nor the court of the power to conform it to such agreement, unless the vested rights of other parties in the litigation were thereby affected and impaired; that the parties to the decree were left as free to contract in regard to that matter as to any other lawful thing, subject only to the qualification mentioned; that the change of the terms and conditions of the decree, rendering it in the opinion of the Circuit Court necessary for the continuance of the receiver-

ship, and the parties in interest having stipulated for the appointment of Joseph Holladay and George W. Weidler in the stead of the respondent, it was legal and proper for the Circuit Court to make the substitution, and the two persons so appointed have a lawful right to continue in the discharge of the duties imposed, until their appointment is revoked by the court that made it; that any person having a claim against Ben Holladay, and desiring to affect his estate thereby that is in the hands of the receivers, is entitled, upon obtaining leave of the said Circuit Court for that purpose, to commence and maintain an action or suit against the receivers in their official capacity, and enforce as ample remedy as though the estate remained in said Holladay's hands, unaffected by any such relationship, or such person may proceed against Holladay directly upon such claim without leave of any court, and affect any property belonging to him, or in which he has an interest, that is not subject to the control of said receivers. The respondent's counsel appeared upon the argument to be somewhat exercised on account of the shape in which the agreement between the parties, of July 10, 1886, and the action of the Circuit Court thereon, had placed the matter, and in consequence of the probable delay it would occasion in its adjustment. This is quite natural. Creditors, long delayed in the collection of their claims, are liable to be importunate and clamorous, and by a sort of attrition, produce zeal and earnestness upon the part of their counsel. But in order to judge fairly the policy that was adopted by the parties to that agreement, the number and magnitude of the claims against Ben Holladay, and his financial condition at the time, should be taken into consideration. The estate was large and valuable, and in the near future, by prudent management, could be made to liquidate all the claims and leave Holladay a reasonable competency, or by a reckless course, could have been sacrificed, and the creditors who were unsecured been compelled to accept a very small dividend, if able to obtain anything. The two ways were open, and it required no great sagacity or deep penetration to discover that one would lead to safe anchorage and the other to wreck and destruction. To have rushed in pell-mell, and seized and sequestered the property, would have bene-

fited outside speculators at the expense of creditors and the debtor. The release of certain of the property from the control of the receivers, and conveying it to Weidler in trust, and charging it with the payment of the claims of Belmont and others, cannot, upon the facts as presented in the case, be deemed fraudulent. If the claims referred to had been fictitious, and the Circuit Court been induced by fraudulent suggestions to make the order releasing the property, the case would present a different phase; but there is no such element as that in the transaction, it is to all appearances an honest effort to secure valid claims as economically to the estate as possible. More than two hundred and eighty thousand dollars was remitted from them, the time of their payment was extended to three years, a low rate of interest was fixed, and the parties charged with the management of the property required to serve without compensation. It left this property thus set apart encumbered, it is true, to the extent of one hundred and sixty-one thousand two hundred dollars; but any excess over and above the amount of the encumbrance is subject to the payment of the other indebtedness, without question; and from the statements made at the hearing, I should judge that there would be quite sufficient to satisfy it. I am unable to discover anything that squints toward fraud in the affair; but upon the contrary, it bears the semblance of a prudent, fair, and honorable adjustment of the matter.

*Co-ordinate jurisdiction of courts.* The effect of the decree of the Circuit Court of the United States in favor of George C. Hickox may be, to charge the estate with the amount decreed to be due said Hickox; whether it does so or not depends upon whether said Circuit Court had jurisdiction of the parties and the subject-matter of the suit at the time of its rendition. It was claimed at the hearing that the suit in which the decree was obtained was not commenced until after the suit of *Ben Holladay* v. *Joseph Holladay* was begun and the receiver appointed, and was heard while the property which the decree purports to affect was in the hands of the receiver. If that is true, I cannot see how the decree can have any force or be rendered operative. There is no principle better established than that where prop-

erty in litigation is taken into the custody of the court, through the intervention of a receiver, a party interested cannot go into another forum and establish any claim to it. The court which first takes cognizance of the controversy is entitled to retain jurisdiction to the end of the litigation, and, incidentally, to take possession and control of the subject-matter of the suit, to the exclusion of all interference from other courts of concurrent jurisdiction. The principle grows out of a spirit of comity, which has the highest aim for the public good, and without the observance of which, conflicts of a serious nature would be likely to arise. Co-ordinate authority emanating from our State and federal governments, administered by their respective tribunals, can be exercised harmoniously only by conceding to the tribunal which first obtains jurisdiction over the thing — the right to the exercise of it. The following language of Mr. Justice Matthews, in *Heidriter* v. *Elizabeth Oil Cloth Co.* 112 U. S. 305, expresses fully my view upon this point: "It is merely an application of the familiar and necessary rule, so often applied, which governs the relation of courts of concurrent jurisdiction, where, as in the case here, it concerns those of a State and of the United States, constituted by the authority of distinct governments, though exercising jurisdiction over the same territory. That rule has no reference to the supremacy of one tribunal over another, nor to the superiority in rank of the respective claims, in behalf of which the conflicting jurisdictions are invoked. It simply requires, as a matter of necessity, and, therefore, of comity, that when the object of the action requires the control and dominion of the property involved in the litigation, that court which first acquires possession, or that dominion which is equivalent, draws to itself the exclusive right to dispose of it, for the purposes of its jurisdiction." It is further illustrated in *Atteborough Bank* v. *North Western Manuf. and Car Co.* 28 Fed. Rep. 113.

The respondent's claim is only partially affected by the foregoing matters. His suit is regularly in court and not embarrassed in consequence of the continuance of the receivership; and if he acquired a lien upon the shares of stock as claimed, he is entitled

to the relief demanded.   Two grounds of objection to his right
to such lien are interposed.   The one is that he could not legally,
while receiver of the property, become a mortgagee thereof; and
the other, that the right of the two law firms attached under the
assignment to them, and is superior to that of his.

*A receiver cannot become a mortgagee.*   The main ground is
the former one, and its determination depends upon whether or
not the attempt to acquire the lien was compatible with the
respondent's duties as receiver.   The office of a receiver is to
take possession of the property, and hold it subject to the order
of the court appointing him.   The property is in the custody of
the law.   The court has the management and disposal of it in
accordance with the rules of law and to answer the ends of jus-
tice, and the receiver is its officer to execute its authority in the
matter.   The powers of a receiver are in the nature of those of a
guardian of a ward's estate, and his relations are of a fiduciary
character.   The property is held for whoever may ultimately
establish a title to it, and the receiver has no power to make any
contract regarding it unless ratified by the court.   It is laid
down as an elementary principle in High on Receivers, section
193, that the courts will not permit a receiver any more than
any other trustee to subject himself to the temptation arising
from a conflict between the interest of the purchaser and the duty
of a trustee, and the author there further says : " The rule has
its foundation in grounds of public policy and in the peculiar
relation sustained by a receiver to the fund or estate in his cus-
tody, which resembles in this respect that of a solicitor, trustee,
or any other fiduciary relation of a like nature, where the same
rule of equity prevails;" and at section 194 says: "The general
rule, as above stated, denying receivers the privilege of becoming
purchasers of property pertaining to their trust, is entirely inde-
pendent of the question whether any fraud in fact has intervened."
The principle here declared forbids a receiver from taking secur-
ity upon the property intrusted to his care as decidedly as it
does from becoming a purchaser of it; his interest and duty
would conflict as much in the one case as in the other ; he holds
the property not for himself but for those who may establish a

title to it, and if he were allowed to acquire a claim upon it in his own favor, it would be very liable to occasion a conflict of interest between himself and the parties for whom it is held. In *Johnson* v. *Gunter*, 6 Bush, 534, where a receiver undertook to retain funds collected by him, and offset his own individual claims against the party to whom they were directed to be paid, the court said: "The money was received by appellee under a decretal order of the court, and his possession is deemed the possession of the court; no discretion is allowed him as to any application or disposition of it, but he holds it subject to the order of the court, and to be paid to whom the court shall adjudge. If the mere agent or instrument of the court can be permitted, after receiving the funds under its order, to set up claims to them wholly foreign to the object of his appointment, the position of a receiver is perverted into that of a speculator in funds, constructively, at least, in court, and their destiny becomes as uncertain after they enter the precincts of the courts as before. The court will not thus permit itself to be made a *quasi* suitor. The same objection exists against allowing a receiver to take a mortgage upon the property to secure his private debt, and the same difficulty suggested would attend the practice. The respondent, no doubt, advanced the money in good faith, and that it should be repaid him with interest there is no question; but to hold that the mortgage, executed to himself upon the shares of stock, is operative under the circumstances would sanction a contravention of public policy, and tend to the establishment of a pernicious precedent. The respondent should not be allowed to claim such lien, nor the relief granted by the Circuit Court, though I think he is entitled to a decree against Ben Holladay and against the receivers for the amount of his debt and interest, to be enforced against the former, personally, and the latter in their official capacity, out of the property in their custody, in the order of priority of payment of such claims, with his costs and disbursements herein, the amount realized from either party to operate as a satisfaction of the debt to the extent of such amount. The decree appealed from should be modified in accordance with this view.

LORD, C. J., specially concurring.—The suit is to foreclose a chattel mortgage on certain shares of stock. The mortgage was executed to the plaintiff while receiver, and while he, as such, held the stock for money advanced to the defendant Holladay, one of the parties, pending the litigation. It is admitted that the money was advanced as alleged, and that the defendant Holladay justly owes the same. The only question is, was the taking of the lien upon property thus in his custody as receiver in contravention of public policy? I am inclined to think it was, and that the view expressed in the opinion in this particular is correct. And, therefore, as to this matter I concur in the result. But deeming the other subjects discussed in the opinion as not essential to the determination of the real question in controversy, I reserve my judgment as to them.