Decided 28 April, 1902.

**TOBIN v. PORTLAND FLOURING COMPANY.**

[68 Pac. 749.]

RIGHT OF RECEIVER TO COLLECT WAREHOUSE CHARGES.

1. Where a warehouseman furnished the owners of wheat with sacks, and when filled they were hauled to his warehouse and emptied into bins for storage until required by the owners, when the sacks would again be filled, and the wheat was treated at all times as being in sacks, the sacks became a part of the wheat, so far as the contract of bailment was concerned; and the bailee possessed a lien for the sacks, so that a receiver of his property, having authority to take charge of the wheat, had power to collect the charges for storage and sacks.

RIGHT OF RECEIVER TO SELL PROPERTY.

2. Where a receiver of a warehouseman's property, authorized to take charge of wheat stored in his warehouses, and collect for storage, etc., sold certain screenings and chop found in the warehouses, the court's approval of his report ratified and made valid the sale.

PAYMENT OF RECEIVER'S FEES AND EXPENSES.

3. When a receiver has been appointed and has taken charge of certain property, his fees and expenses are a first lien on the proceeds thereof, if he was regularly appointed and the court had jurisdiction over the property.

From Linn: REUBEN P. BOISE, Judge.

Suit by sundry depositors of wheat in the warehouses of the late T. J. Black against two flouring companies, an exporting firm, and the administrator of Mr. Black's estate, for an accounting as to the wheat deposited, and which had been sold. There was a decree adjudicating all the rights of the parties, and also the rights of all depositors not parties, from which the flouring companies appealed, and the opinion on the questions there involved will be found in 41 Or. 269. Mr. A. Wheeler having been appointed receiver of the warehouse properties belonging to the Black estate, an order was made in due time fixing his compensation and approving certain expenditures, from which the administrator prosecutes this appeal.

This is a controversy regarding the payment of receiver's fees and expenses from a particular fund. The transcript shows that a receiver was appointed in the original suit to take charge of the wheat in the warehouses of T. J. Black, deceased, at Halsey, Cummings, and Derry, and in pursuance thereof he filed a report, showing the quantity of wheat found in the several warehouses, and stating that the storage charges thereon, together with the value of the sacks furnished by Black to the depositors, amounted to about $4,300, which sum, if used to pay his fees and expenses, would permit nearly all the wheat so stored to be delivered to the persons entitled thereto; but, if the money collectible from these sources could not be applied in this manner, it would be necessary to retain a part of the wheat in each warehouse, and to sell the same for that purpose. The court, in order to create a fund from which to pay the fees and expenses of the receiver, ordered him to retain 15 per cent of the wheat in store, and to deliver the remainder, *pro rata,* to the depositors. In a subsequent report, the receiver notified the court that he had sold a quantity of chop found in the warehouse at Halsey, and some screenings at Derry, for $115.07 and $30.85, respectively, and had collected on account of storage and for sacks sold at Derry $1,123.39, at Cummings $398.31, and at Halsey $1,313.39, receiving in all the sum of

$2,981.01; that he had incurred expenses at Derry, $232.02, at Cummings, $67.45, and .at Halsey, $391.31, and general expenses, $368.57, making in all the sum of $1,059.65, and petitioned the court that the money so received be used to liquidate such expenses, and also to pay for his services and the fees of his attorney. The defendants the Portland Flouring Mills Co. and the Salem Flouring Mills Co. remonstrated against the application of any of the money so received for the purposes indicated, on the ground that they were creditors of T. J. Black's estate, which was insolvent. James C. Black, administrator of said estate, also remonstrated against such use of the money, on the ground that it was received from choses in action of said estate to which he was entitled. The court, having found that the receiver was entitled to the sum of $1,375 for his services, $500 as the fees of his attorney, and $1,059.65 for expenses necessarily incurred, making in all $2,934.65, decreed that this sum should be paid from said collection of $2,981.01; that from the sums so received, or to be collected from the warehouses at Cummings and Derry, there be applied on account of the sum so found to be due the receiver the sums of $780.61 and $742.37, respectively, upon payment of which any sum remaining from the collections from said warehouses should be paid to said administrator; and that the receiver should retain all moneys received or to be collected at Halsey until the further order of the court, from which decree James C. Black, as administrator, appeals.          AFFIRMED.

For appellant there was a brief over the name of *Bauer & Greene,* with an oral argument by *Mr. Thomas C. Greene.*

For the Portland and Salem flouring mill companies there was a brief over the names of *Sanderson Reed* and *Williams, Wood & Linthicum,* with an oral argument by *Mr. Reed.*

For plaintiffs there was an oral argument by *Mr. J. R. Wyatt.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. It is contended by appellant's counsel that the receiver's authority to take charge of the wheat in the several warehouses did not extend to the collection of the sums due from the depositors on account of storage, or for sacks furnished by Black; that, the estate of the decedent being insolvent, the administrator was entitled to such choses in action that he might collect the accounts, and apply the proceeds *pro rata* among the creditors who were entitled to this fund; and that, the wheat stored in the warehouses at Cummings and Derry having been withdrawn from the subject-matter of the suit, the plaintiffs should have been compelled to pay the fees and expenses of the receiver, and hence the court erred in rendering the decree of which they complain. We will consider the legal principles thus insisted upon in their order.

A receiver is an officer of the court, whose agent he is, having power to manage and dispose of property as he may be directed: Hill's Ann. Laws, § 1060. And the rule is quite general that, in the absence of a statute prescribing a receiver's powers, his authority is confined to the order appointing him, unless such power is enlarged by a subsequent order of the court: *Thompson* v. *Holladay*, 15 Or. 34 (14 Pac. 725); *Davis* v. *Gray*, 83 U. S. (16 Wall.) 203. The testimony tends to show that the depositors entered into a contract with Black by the terms of which they agreed to pay him a stated sum per bushel, payable when the wheat was withdrawn, for cleaning, storing, and furnishing the necessary sacks therefor. Black furnished his customers with sacks, into which the wheat was placed when threshed, and these sacks, when filled, were hauled to the warehouse, where they were emptied, and the wheat cleaned and placed in bins with other wheat of like grade and similar quality, where it usually remained until required by the depositors, when it would again be placed in sacks for redelivery or shipment. While the wheat may have been kept in bulk in the bins at the warehouse, it was treated by Black and the depositors as being at all times in sacks, which, to all intents and purposes, and as far as the contract of bailment was concerned, became a part of the wheat, and, as such, passed into the pos-

session of the receiver under the court's original order. Black undoubtedly had a lien upon the wheat deposited in his warehouse, to secure the storage charges thereon, as well as for the cost of the sacks which he furnished; and having, as bailee, the possession of the wheat, he could have retained such possession and refused a delivery thereof until such charges were paid. The receiver succeeded to all the rights that Black enjoyed in relation to the wheat, and was therefore authorized to collect the charges for storage and sacks under the original appointment.

2. Whether the chop found at Halsey and the screenings at Derry are to be regarded as "wheat," it is not necessary to inquire, for screenings come from cleaning wheat, and chop from grinding the screenings. These commodities having been sold by the receiver, and his report of such sales approved, the court's order to that effect ratified his action, as though the authority had been originally granted (*Thompson* v. *Holladay,* 15 Or. 34, 14 Pac. 725), thereby depriving the administrator of Black's estate of the possession of such property and choses in action, to which he would otherwise have been entitled.

3. If any shortage existed in the quantity of wheat that should have been in store at Cummings and Derry, the deficiency is not considered of sufficient importance to be the subject of controversy, for it will be remembered that the wheat found in the warehouses at these places was relieved from the operation of the decree. We do not understand that such withdrawal operated to interfere with the action of the receiver in taking possession of the wheat in these warehouses, and collecting the charges for storage and the cost of the sacks, or in selling the screenings found at Derry. The wheat so stored was in Black's custody, as bailee, until he died, when the right of possession passed to his representative, where it remained until this suit was instituted, and the receiver appointed, who took possession, and, the court having jurisdiction of the *res,* the fund arising therefrom was subject to its order, and burdened with the reasonable expenses and fees of the receiver. The administrator, as a party defendant in the suit,

interposed no objection to the appointment of a receiver of the wheat stored at Cummings or Derry, nor did he take any exception to the receiver's claim for fees and expenses until it was suggested that they should be paid out of the fund so created. If the receiver had found no shortage in either warehouse, his right to be paid for his reasonable services and to be reimbursed for his expenses must be conceded. Such a discovery may have shown that no necessity existed for the appointment, but he was an officer of the court and his fees and expenses were properly allowed, and the fund having been created by his execution of the court's order of appointment and brought into court must bear the expenses incurred by the proceedings in preference to all other claims against it: *Martin* v. *Martin,* 14 Or. 165 (40 Pac. 234) ; *Hembree* v. *Dawson,* 18 Or. 474 (23 Pac. 264) ; *Petersburg Sav. & Ins. Co.* v. *Dellatorre,* 70 Fed. 643 (7 C..C. A. 310). "The great underlying principle," says Mr. Beach in his work on Receivers (section 773), "is that the compensation of the receiver is a charge upon the funds which may come into his hands." The same author, in section 774, also says: "The rule that the compensation of a receiver is a charge upon the funds in his hands has been held not to apply without qualification to the case where the appointment was irregularly made, and is vacated." Thus, in *Ephriam* v. *Pacific Bank,* 129 Cal. 592 (62 Pac. 178), Mr. Justice Harrison, commenting upon this exception to the general rule, says: "If he has taken property into his custody under an irregular, unauthorized appointment, he must look for his compensation to the parties at whose instance he was appointed, and the same rule applies if the property of which he takes possession is determined to belong to persons who are not parties to the action, and is taken from his possession by paramount authority. As to such property his appointment as receiver was unauthorized, and conferred upon him no right to charge it with any expenses." In the case at bar the appointment of the receiver was authorized and regular, and the property of which he secured possession was in the custody of said administrator, who is a party to the suit, whereby the

court secured jurisdiction of the subject-matter and of the parties, and was authorized to charge the receiver's fees and expenses against the fund which he had collected; and hence the decree is affirmed.                                   Affirmed.