## Waters-Pierce Oil Company v. State of Texas.

### Decided June 28, 1907.

**1.—Receivers—Conflict of Jurisdiction.**

When the power of a court having jurisdiction is first invoked to seize and administer property, its jurisdiction is exclusive, and no other court of concurrent jurisdiction can interfere to materially disturb or hinder the former in the exercise of its authority and jurisdiction over the res.

**2.—Appeal—Supersedeas—Jurisdiction over Res.**

Appeal with supersedeas from an order appointing a receiver merely suspends the enforcement of the judgment of the trial court, but does not deprive the appellate court of its power and jurisdictio . o er the res, and to finally dispose of the same, and to protect it by the exercis of its authority during the time the controversy is pending.

**3.—Receiver—Jurisdiction in Rem.**

The judgment of a District Court of Texas depriving a foreign corporation of its right to do business in this State for violation of the law against trusts and unlawful combinations, and appointing a receiver for its property, under the terms of the Act of April 11, 1907, was for the purpose of subjecting such property to the judgment for the penalties recovered, and was a proceeding in rem drawing to the custody of the court all the property of the corporation.

**4.—Same—When Jurisdiction Attaches.**

The order appointing a receiver, the defendant being in court, attaches the

jurisdiction of the court in rem, by relation, from the time of the filing of the bill for such appointment.

### 5.—Same—Appeal—Supersedeas.

By appeal and supersedeas of the order appointing a receiver the jurisdiction is transferred to the appellate court, and with it the power to administer all remedies necessary to the preservation of the res to await final judgment, and the exemption from interference with this power by other tribunals.

### 6.—Conflict of Jurisdiction.

The Circuit Court of the United States having appointed a receiver of the property involved in this suit charged by its order with full power to administer and dispose of such property, of which he has taken possession, and this when jurisdiction over the same had attached to the Court of Civil Appeals by the pending proceedings and receivership, the receiver appointed by the trial court is directed to apply to the United States court for such orders as may be necessary to protect the jurisdiction of this court.

### 7.—Receiver—Jurisdiction of the Court of Civil Appeals.

In the opinion of Justice Key, the Court of Civil Appeals, if not authorized by the general principles of law to appoint a receiver to protect its jurisdiction over the property pending its hearing of the appeal, has statutory authority therefor by section 2 of the Act of April 11, 1907; and the court should appoint such receiver, treating the appointment of the receiver by the Federal Court and his possession as void because jurisdiction had first attached to the State Court, and should enforce, by injunction or other appropriate process, the delivery of possession by him to the receiver here appointed.

Petition for the appointment of a receiver and for other relief, to the Court of Civil Appeals for the Third District, in the pending appeal of the Waters-Pierce Oil Company v. State of Texas, from the District Court of Travis County.

*Robert V. Davidson,* Attorney-General, *Jewel P. Lightfoot* and *W. E. Hawkins,* Assistants, *Jno. W. Brady,* County Attorney, and *Gregory & Batts,* for application.

*Cochran & Penn* and *N. A. Stedman,* for respondent.

FISHER, Chief Justice.—On June 21, 1907, the State of Texas, a party to the above styled cause, through and by its attorney-general and the county attorney of Travis County, and Robert J. Eckhardt, receiver of the property of the Waters-Pierce Oil Company, presented to this court an application on behalf of the State and the receiver, stating substantially that on the 22d day of September, 1906, the State instituted in the District Court of Travis County, Texas, a suit against the Waters-Pierce Oil Company, a corporation organized under the laws of Missouri, and exercising and carrying on its business in this State under a permit so to do. The purpose and object of the suit was to recover of the oil company penalties and to cancel its permit to do business in the State on account of violation of certain provisions of the anti-trust laws of this State. That the case, upon issues joined, came on for trial on the 20th day of May, 1907, and terminated on June 1, 1907, with a verdict and judgment in favor of the State against the defendant for the sum of $1,623,900, and canceling the permit of

the defendant to carry on and conduct its business within this State. That on the first day of June, 1907, after the return of the verdict and the entry of the judgment, the State presented to the judge of the court where the case was pending an application for the appointment of a receiver of the property and assets and business of the defendant corporation within the State of Texas, which application was set down for hearing on the 8th day of June, 1907. In that application the State also requested an injunction restraining the defendant from removing any of its property from the limits of the State of Texas; and also stating in the application that the State, by virtue of a recent Act of the Legislature, had a lien upon all of the properties and assets of the defendant company for the satisfaction of the judgment that the court had rendered.

At the same time the court, upon application therefor, issued a temporary restraining order to that effect, prohibiting the defendant, its agents, officers and attorneys, from removing beyond the State any of the assets of the defendant corporation, which order, by subsequent decree, was kept alive and was not superseded by the appeal. Upon this application for receiver and injunction, etc., notice was issued and served on the defendant on the first day of June, 1907. The matter coming on for hearing on the 8th day of June, the court passed the same until the 10th day of June, when upon that day he announced that he would appoint a receiver, as requested, but would for forty-eight hours defer naming the person to be so appointed, in order to give the parties through their respective counsel opportunity to make any objections they desired to Robert J. Eckhardt, otherwise, at the end of that time, Eckhardt would be appointed. Thereafter, on the 13th day of June, 1907, no objections being made, the court entered an order confirming the order of June 10th, providing for the appointment of a receiver, and named and appointed Eckhardt receiver of all of the property and assets of the defendant Waters-Pierce Oil Company within this State, or that may thereafter come within the State; and further provided that the temporary injunction previously granted should continue in force. On June 15th, the court, by amended order, specifically and more largely defined the duties of the receiver, but in no wise affected his power and authority to take possession of the property of the defendant company. The amended order is as follows:

"In District Court, Travis County, Texas,
June 15, 1907.
———ooo———

24,551. The State of Texas v. Waters-Pierce Oil Company.

"And now on this 15th day of June, A. D. 1907, at a regular term of this court,

"It is considered, ordered, adjudged and decreed by the court that the orders of this court made and entered in said cause on the 10th day of June, A. D. 1907, and the 13th day of June, A. D. 1907, be so amended as to hereafter read as follows:

"And now on this 10th day of June, 1907, at a regular term of this court there came on to be heard the application of the State of Texas for the appointment of a receiver of the property and assets of the Waters-Pierce Oil Company, a corporation, pending the further disposition of this cause, and the court, after duly considering said application, is of the opinion that the prayer should be granted and a receiver appointed to take charge of all the property and assets of the defendant, the Waters-Pierce Oil Company, situated within the State of Texas, or that may hereafter come within the State of Texas, and that such receiver shall immediately take charge of all of said property and assets and hold the same subject to the further orders of this court, and said receiver is hereby directed and instructed to continue and carry on the business of the defendant until such future time as the court may direct, keeping and preserving the property coming into his custody and carrying on the business of marketing and supplying oil to the public in the State of Texas, with the right, power and authority to continue the various clerks, servants and agents of every class and grade now in the employ of the defendant or to discharge them and employ others at his discretion and to require such bonds and security to himself as receiver from any of the present employes, or those hereafter engaged by him, as he may think expedient and proper, and to sell the present stock of oil and other products and personal property in the hands of the defendant and which may come into his hands as receiver, and to purchase and sell other oil, products and personal property in the regular course of business of the defendant to the same effect as the defendant could or might have done in the continuation of said business, so that said business may be kept up to its present condition as near as may be; and the said receiver shall have power, under control of the court, to bring and defend actions in his own name as receiver, to take charge and keep possession of the property, to insure the same against loss and destruction by fire or otherwise, as he may deem proper, to receive rents, collect, compound for, compromise demands, employ one or more attorneys at law, make transfers and generally to do such acts respecting the property as the court may authorize and all the expenses of said receivership, including taxes, insurance premiums, attorney's fees, his own compensation and all expenses of said receivership to be paid as a part of the court costs of the suit.

"That the temporary injunction heretofore granted, prohibiting the defendant from moving any of its property and assets beyond the limits of the State of Texas, be, and the same is, hereby continued in force until the further orders of this court.

"To all of which the defendant in open court excepts, and in open court gives notice of appeal to the Court of Civil Appeals of the Third Supreme Judicial District of Texas;

"And on this the 13th day of June, A. D. 1907, the court confirming said order and in pursuance thereof names and appoints as receiver herein of the property in said order described, Robert J. Eckhardt, who is a resident citizen of the county of Williamson, in the State

of Texas, with the duties and powers therein named, and fixes the amount of his bond as such receiver at ($250,000) two hundred and fifty thousand dollars, to be made payable to the judge of this court and his successors in office, for the use of all parties interested in said property and this suit.

"And defendant renewed its exceptions to the appointment of a receiver and gives notice of appeal from the order appointing a receiver to the Court of Civil Appeals for the Third Supreme Judicial District of Texas, at Austin."

The bond of the receiver was fixed at $250,000, and on the 19th day of June, 1907, at 10 o'clock a. m., the bond, with proper sureties, was approved and filed and the said Eckhardt at the same time accepted and qualified as receiver.

The court in said cause on the 15th day of June, 1907, made and entered an order fixing the sum of $100,000 as the amount of bond which the Waters-Pierce Oil Company was required to give in order to perfect an appeal from the order appointing a receiver. On the 19th day of June, 1907, at 10 o'clock a. m., the Waters-Pierce Oil Company perfected its appeal from the order appointing a receiver under a bond approved by the court.

On the 15th day of June, 1907, a motion for a new trial previously filed by the Waters-Pierce Oil Company, was by the court overruled; and in open court notice of appeal was given to the Court of Civil Appeals, which notice was entered in the minutes of the court. Thereupon, in the main case, the Waters-Pierce Oil Company, defendant, executed a supersedeas appeal bond from the judgment for penalties and cancellation of permit, which bond was in due form and was properly approved by the clerk of the court.

That on the 19th day of June, 1907, after all of the above mentioned proceedings were had, there was filed in the Circuit Court of the United States for the Eastern District of Texas, on behalf of one Bradley W. Palmer, who claims to be a stockholder in the Waters-Pierce Oil Company, a bill of complaint against the Waters-Pierce Oil Company, with the request for the appointment of a receiver of all the property and assets of the defendant company situated within the State of Texas. That in response to the prayer of the bill, the Hon. David Bryant, Judge of the Circuit Court of the Eastern District of Texas, appointed one C. B. Dorchester receiver of all of the property and assets of the company situated within the State. The petition proceeds to state that Dorchester, as receiver, will dispose of the property of the Waters-Pierce Oil Company, thereby depriving the State court of its authority under the receivership to administer same. The application concludes with a prayer for extensive relief against the receiver appointed by the judge of the United States Circuit Court, and for all orders and decrees that may be necessary and proper to be entered in protecting this court in the jurisdiction it had acquired over the property by virtue of the appeal from the orders and decrees and judgments of the trial court.

The application when presented, was set for hearing by this court

for Monday, June 24, 1907; and, under instructions of the court, notices were caused to be issued to the receiver appointed by the Federal Court and attorneys for the Waters-Pierce Oil Company, of the time and place when the application would be considered. On the day appointed the State and the Waters-Pierce Oil Company appeared; and from statements and arguments in open court then made, and from affidavits and records then presented, the facts substantially alleged in the application of the State were found to be true. And in addition thereto, the fact was established that Dorchester, as receiver, had qualified, and that he was in actual possession of the property of the Waters-Pierce Oil Company situated within the State, and that the receiver appointed by the State was not, and had never been, in possession of any of the property of the defendant company; that the order of the United States Court was very comprehensive, authorizing the receiver to take possession of all the property of the Waters-Pierce Oil Company within this State, and to carry on and conduct its business and sell its property. The receivership in that court is, like that of the State court, merely confined to the business and property within this State; and there is nothing in the decree of the United States Circuit Court recognizing the right of the State, as fixed by the judgment and decree on appeal in this court. Nor does it appear that the receivership is merely temporary and for the purpose of protecting the property of the defendant during the pendency of the appeal; but that decree is so comprehensive that final action under it may go to the extent of the final and complete disposition and diversion of all the property and assets of the Waters-Pierce Oil Company within this State.

There is a rule, not only one of comity, but which by force of judicial decisions of the highest court in the land has become one of jurisdiction, a rule so universally recognized that no court will question it, and it may be stated to be, that when the power of a court of jurisdiction is first invoked to seize and administer property, its jurisdiction is exclusive, and no other court of concurrent jurisdiction can interfere to materially disturb or hinder the former in the exercise of its authority and jurisdiction over the *res.*

In Farmers Loan & Trust Company v. Lake Street Elevated Ry. Co., 177 U. S., 51; 44 L. Ed., 671, it is said: "The possession of the *res* . . . vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto; and, for the time being, disables other courts of coordinate jurisdiction from exercising a like power." This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdictions embrace the same subjects and persons. Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, to administer trusts or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume

the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to Federal and State courts. Peck v. Jenness, 7 How., 612; 12 L. Ed., 841; Freeman v. Howe, 24 How., 450; 16 L. Ed., 749; Moran v. Sturges, 154 U. S., 256; 38 L. Ed., 981; Central Natl. Bank v. Stevens, 169 U. S., 432; 42 L. Ed., 807; Harkrader v. Wadley, 172 U. S., 148; 43 L. Ed., 399."

Chief Justice Fuller, in In re Tyler, 149 U. S., 186; 37 L. Ed., 696, said: "In Covell v. Heyman, 111 U. S., 176, where the question arose as to the replevin by process from a State court of property held by a United States Marshal, which this court held could not be permitted, Mr. Justice Matthews delivering the opinion said: 'The forbearance which courts of co-ordinate jurisdiction administered under a single system, exercise towards each other, whereby conflicts are avoided by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between State courts and those of the United States, it is something more. It is a principle of right and of law, and, therefore, of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it has been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void.'

"This principle is applicable here, for whether the sheriff were armed with a writ from a State court or with a distress warrant from a county treasurer, this property was as much withdrawn from his reach as if it were beyond the territorial limits of the State."

This principle has often been recognized and applied when jurisdiction has been exercised in appointment of receivers, which is illustrated in many of the cases to be hereafter cited. Whether this principle shall be applied in affording the complainants in this instance any relief, three matters must first be determined:

1. What was the nature and character of the controversy in the trial court? Was the procedure and relief merely *in personam* or *in rem,* or partly so; and if the latter, at what stage of the proceeding did jurisdiction attach?

2. If it was a proceeding wholly or quasi *in rem,* did this court retain jurisdiction when the appeals were prosecuted under supersedeas bonds?

3. If an affirmative answer is given to the second question, does the action of the Circuit Court of the Eastern District, in appointing a receiver and taking possession of the property, materially interfere with the exercise of jurisdiction by this court, or do its acts come within a recognized exception to the general rule?

Before determining these questions we desire to say, that from

what was said in argument in submitting this controversy and from statements made by counsel who represented the complainant in the Circuit Court, the learned judge of that court was, in appointing a receiver, influenced to some extent by the opinion in Peoples Cemetery Assn. v. Oakland Cemetery Company, 60 S. W. Rep., 679, and like cases. We are also impressed with the idea that the learned judge in making the appointment, did not have before him the Act of the Legislature which· took effect April 11, 1907. The case relied on was doubtless correctly decided upon the facts peculiar to it, but is not, in our opinion, authority for the proposition that this court, if jurisdiction was obtained by appeal, lost its power over the *res* upon execution of a supersedeas bond. The decision is merely to the effect that the appeal by supersedeas suspends the enforcement of the judgment of the trial court. There is in the opinion an expression that the supersedeas is security for the judgment. This, in one sense, is correct; but can not be held to mean that if there is a *res* in controversy which has been brought within the· jurisdiction of the court when the appeal was perfected, that the supersedeas bond deprived the court of its power and jurisdiction over the *res* and to finally dispose of the same, and to protect it by the exercise of its jurisdictional authority during the time the controversy is pending. No one denies the fact that a supersedeas appeal suspends the enforcement of the judgment of the trial court; but when we reach the broad question of the jurisdiction over the thing involved in the controversy, the authorities which we will cite in disposing of the questions suggested, are persuasive to the effect that it was never intended that the supersedeas appeal should ·deprive the appellate court of jurisdiction of the property in controversy, which, in whole or in part, was the subject of litigation.

In disposing of the first question the inquiry is: What was the nature and purpose of the controversy in the State court? A proper answer depends largely upon the purpose and effect of the Act of the Legislature of April 11, 1907, which, as before said, went into operation from its passage. The provisions of that Act which relate to the subject under consideration, are as follows:

In section 1 it is provided: "Whenever any corporation created under the laws of this State, or any foreign corporation authorized to do business in this State, shall violate any law of this State, including any law against trusts, monopolies and conspiracies or combinations or contracts in restraint of trade, for the violation of which fines or penalties or forfeitures are provided, all property of such corporation within this State at the time of such violation or which may thereafter come within this State, shall, by reason of such violation, become liable for such fines or penalties and for all costs of suit and of collection, and the State of Texas shall have a lien on all such property from the date that suit shall be instituted by the attorney-general or district or county attorney acting under his direction in any court of competent jurisdiction within this State for the purpose of forfeiting the charter or canceling the permit of such corporation, or for such fines or penalties.

The institution of such suit for such fine, penalties or forfeiture shall constitute notice of such lien. Where any such law has heretofore been violated, or shall be violated before the taking effect of this Act, and a cause of action exists for such fine, penalties or forfeiture, or shall come into existence before the taking effect of this Act, and suit shall be filed in such case, the State shall have a lien to secure the payment of such fine, penalties and costs from the time this Act shall take effect on all property of such corporation within this State or which shall thereafter come or be brought within the State."

Section 2 is as follows: "Any action or cause of action for any fine, forfeiture or penalty that the State of Texas has or may have against any corporation chartered under the laws of this or any other State, Territory or Nation, shall not abate or become abated by reason of the dissolution of such corporation, whether voluntary or otherwise, or by the forfeiture of its charter. Whenever a corporation against which the State has heretofore instituted suit or shall hereafter institute suit, for forfeiture of its charter, or cancellation of its permit, or for fines or penalties under any law of this State, shall dissolve in this or any other State, or shall have a judgment rendered against it in this or any other State for the forfeiture of its charter, the court in this State in which suit is pending shall appoint a receiver for the property and business of such corporation within this State or that may come or be brought within this State during such receivership, or the court may, in any case wherein the State is suing any such corporation for the forfeiture of its charter or of its permit to do business in this State, or for fines or penalties, appoint a receiver for such corporation, whenever the interests of the State may seem to require such action. If such dissolution shall take place or judgment of forfeiture be rendered against such corporation before this Act takes effect, the court shall, upon the taking effect of this Act, appoint a receiver for the property and business of such corporation in this State; and the State shall have the right to the writs of attachment, garnishment, sequestration or injunction, without bond, to aid in the enforcement of its rights created by this Act; and all property that may come into the possession of any receiver appointed under the provisions of this Act, not otherwise exempt by law, shall be subject to the lien herein created, and for the payment of any such fine or penalty."

Section 3 is as follows: "The attorney-general, or any district or county attorney acting under his direction, may bring suits in the name of the State of Texas for the foreclosure of such lien in the District Court of any county in the State of Texas, and in case the suit for foreclosure should be brought against any corporation which has dissolved or had a judgment for the forfeiture of its charter or the cancellation of its permit rendered against it, pending any suit by the State of Texas against such corporation for forfeiture of its charter or cancellation of its permit or for penalties or fines, service may be had upon any person within this State who acted and was acting as agent of any such corporation in this

State at the time of such dissolution or forfeiture of charter or cancellation of permit."

The validity of this Act in any of its terms not questioned at the submission of this controversy; and we know of no good reason why its main features, which we propose to discuss, could be objected to on constitutional grounds. But, however, that question is not before us, and, for the purposes of the disposition of this application, we must treat the Act in all respects as valid.

It is apparent the trial court had before it the Act in question, and that it largely governed that court in granting the injunction and entering the order appointing a receiver. Reasonable minds can hardly differ as to the purpose, scope and effect of this Act. One of its principal purposes is to subject the property of the corporation to the jurisdiction of the court upon judgment for penalties and decree of forfeiture of permit, in order that an ultimate benefit would result to the State from the judgment rendered; and that, in keeping with the policy of the statute that condemned in the interest of the public the illegal business, the State could, upon dissolution of the franchise to do business, by control of the property and the business, administer the same in the interest of all concerned, and thereby could effectually check a further pursuit of the illegal business by the corporation adjudged guilty. A proceeding having for its purpose these objects, is clearly one *in rem;* and if the terms of the statute are invoked to accomplish all the purposes authorized, a seizure of the property is absolutely essential, and the way opened by the statute to accomplish this is through a receiver; and the court having so ordered and decreed the appointment of one, there was drawn to the custody of the court all of the property of the corporation, and for all of the purposes enumerated, as stated in the order. For the efficient enforcement of the terms of the statute, in addition to the lien created by it, it also provided for a judicial possession and seizure of the property; and when the court, by virtue of this law, laid its hands upon it, its jurisdiction completely attached, not only to the person of the defendant, but to the thing that the law made liable for the consequences of the illegal acts denounced by the statute upon which the suit is based.

When did the property become in *custodia legis,* and when did the jurisdiction of the trial court attach? For the purpose of this controversy we need not discuss the conflict of decisions which on the one hand hold that the jurisdiction is complete from the filing of the bill, and upon the other that it does not attach until service of subpoena, for here in this instance it is clear that the defendant corporation was in court properly served and appeared in the receivership proceeding. When service is had or there is the equivalent by appearance, if there could be any doubt as to which of the two lines of decisions should prevail, the weight of reason and authority is clear to the effect that the jurisdiction of the court will, under the doctrine of relation, after order made commence from the time of the filing of the bill for appointment, although no possession has been taken by the receiver of the property sought to

be administered by the court. This principle is well settled. "The commencement of a suit, the object of which is to have certain property sequestered and administered for the benefit of all having an interest herein, and the possession and control of which are necessary to grant the full relief prayed for, constitutes an equitable levy; and, pending the suit, such property is *in gremio legis,* and the court whose jurisdiction is first invoked, whether State or Federal, has the exclusive right to seize and administer the property over another court of concurrent jurisdiction in which a subsequent suit is commenced, though a receiver be first appointed therein and actually takes possession of the property." Alderson on Receivers, 24.

In Illinois Steel Co. v. Putnam, 68 Fed. Rep., 515, in the Circuit Court of Appeals presided over by the circuit judges of this district, in reaffirming the doctrine of Adams v. Mercantile Trust Company, 66 Fed. Rep., 621, a decision also participated in by Judges Pardee and McCormick, the court said: "Where a bill in equity brings under the direct control of the court all the property and estate of the defendants or of certain named defendants, or certain designated property of all or either of the defendants, to be administered for the benefit of all entitled to share in the fruits of litigation, and the possession and control of the property are necessary to the exercise of the jurisdiction of the court, the filing of the bill and the service of the process is an equitable levy on the property; and, pending the proceeding, such property may properly be held to be *in gremio legis.* The actual seizure of the property is not necessary to produce this effect where possession of the property is necessary to granting of the relief sought. In such cases the commencement of the suit is sufficient to give the court whose jurisdiction is invoked the exclusive right to control the property."

It is said by the court in Dillon v. Oregon Short Line Ry., 66 Fed. Rep., 622, that this rule is founded not only on comity, mere courtesy, but on utility and principles of sound policy. There are many authorities that announce substantially the same rule, among which may be mentioned Thompson v. Holladay, 15 Ore., 34; 14 Pac. Rep., 725; Merrian v. Ross, 122 Mo., 435; 25 S. W. Rep., 942; Judd v. Bankers & Merchants Tel. Co., 31 Fed. Rep., 182; Union Trust Co. v. Rockford, Rock Island Ry. Co., 6 Biss., 197, and another like case in the same book on page 286; May v. Printup, 59 Ga., 129; People v. Central Bank, 53 Barb., 412; In re Hall & Stillson, 69 Fed. Rep., 425; Reisner v. Gulf, C. & S. F. Ry. Co., 89 Texas, 659; Northwestern Iron Co. v. Lehigh Coal Co., 92 Wis., 487, and Texas Trunk Ry. Co. v. Lewis, 81 Texas, 1. The two Texas cases cited are instructive upon this subject, and fully support the text as quoted.

In Reisner v. Gulf, Colorado & Santa Fe Railway Co., supra, it is said in speaking of the appointment of a receiver: "This action of the judge was sufficient, if followed up in due time by the appointment of a receiver, to fix the jurisdiction of that court upon all of the property of defendant in that suit as to liens there-

after attempted to be acquired through the process of other courts. Under such circumstances the appointment, when made, would relate back to the filing of the bill."

Hence in this case, from the orders reviewed in the light of these authorities, it is clear that the State court had acquired complete jurisdiction of the *res,* which it fully retained until the appeal to this court was perfected; and during the existence of its authority, under the doctrine stated, no court had the power to disturb its jurisdiction or invade its limits; and here at this point it is proper to consider the second question.

In Gulf, Colorado & Santa Fe Ry. v. Ft. Worth & N. O. Ry., 68 Texas, 103, it is said: "When an appeal from a final judgment of the District Court is duly perfected, the jurisdiction over the case ceases in that court upon its adjournment for the term and attaches to the Supreme Court. An injunction existing in the lower court at the time of appeal may be conceded to become the injunction of the court to which the appeal is taken. Teas v. Robinson, 11 Texas, 777; McLaughlin v. Janney, 6 Grat., 609; New Brighton & N. C. Ry. Co. v. Pittsburg, Y. & C. Ry. Co., 105 Pa. St., 13; Yeoman v. Lasley, 36 Ohio St., 416; Slaughter House Cases, 10 Wall., 292."

In San Antonio Street Ry. v. State, 38 S. W. Rep., 54, it appears a mandamus was issued by the trial court requiring the Street Railway Company to operate a part of its road. There was an appeal by the Street Railway Co. under a supersedeas bond from this decree. During the pendency of the appeal it was made known to the Court of Civil Appeals where the case was pending, that the railway company was removing the rails and destroying the track. Thereupon that court issued an injunction restraining a further destruction of the track, etc. In the opinion delivered, in the exercise of its jurisdiction by injunction, and in holding the officers of the company guilty of contempt, it was said: "The appeal from the trial court removed the case from that court and placed it with the parties, as well as the subject matter of litigation, wholly within the jurisdiction of this tribunal; but the judgment of the District Court is not affected by the appeal further than proceedings to enforce it are stayed, a supersedeas bond having been filed."

The court in the case of Churchhill v. Martin, 65 Texas, 368, in speaking of its jurisdiction, says: "That the execution of a judgment awarding a peremptory writ of mandamus may be suspended by a proper appeal bond, is not an open question in this court. Griffin v. Wakelee, 42 Texas, 513. After the approval of such a bond the District Court, during the term, still has jurisdiction to modify or set aside the judgment appealed from (Blum v. Wettermark, 58 Texas, 125; Garza v. Baker, 58 Texas, 487), but not to enforce such judgment. When the bond has been filed and approved the complaining party has done substantially all required of him to give this court jurisdiction of the case; and this court may then, under the Constitution, to protect and enforce its jurisdiction, issue writs of injunction, etc."

In Wells v. Littlefield, 62 Texas, 30, the Supreme Court, in speaking of its jurisdiction, says: "So soon as the jurisdiction attaches

under an appeal or writ of error, this court has full control of the cause, and can make such orders concerning it as may be necessary to preserve the rights of the parties and enforce its mandates. This jurisdiction continues until the case as made by the appeal or writ of error, is fully determined by this court, and its judgment is completely executed by the court below. If the judgment below is affirmed, or reversed and rendered or reformed, this court can see that the party in whose favor its decision has been given has the benefit of all proceedings below necessary to enforce its judgment."

Of course, it is needless to say that what is said in these cases with reference to the jurisdiction of the Supreme Court under the old system, is applicable to the jurisdiction of the Courts of Civil Appeals under the present system. It would be idle to engage in argument to demonstrate this proposition.

When an appeal is perfected the jurisdiction of the appellate court attaches, not partially or imperfectly, but to the entire controversy that is involved in the proceeding on appeal. The supersedeas bond does not affect the jurisdiction of the court over the subject of controversy; it merely suspends the enforcement or execution of the judgment below. The purpose of the law is to keep alive the jurisdiction over the subject matter, and this upon appeal is a mere transfer from one tribunal to another; and can it be reasonably contended that when it reaches the tribunal in which a bond is required of the party appealing that he will abide by the judgment, sentence or decree of the court, that all jurisdiction of the subject matter ceases, and that the court is limited in its authority only to what liability may be established against the obligors in the bond. Of course, such a proposition is absurd; for in many cases the subject of litigation, the *res,* would, by reason of this process of evolution, be finally converted when the appellate court reached its decision into practically a proceeding *in personam.* If there is a *res* in controversy it remains so to the end; and it was never intended that a supersedeas bond would destroy the power of the court to determine the rights of the litigants to the thing in controversy and enter such a decree as may be proper to its disposition. The State, by reason of the appeal bond, lost no remedy it invoked in the trial court and for which a judgment or decree went in its favor; and when the case reached here it fell into our jurisdiction with all of the authority of this court extended over all of its parts, which jurisdiction was as full and complete as that possessed by the trial court before appeal; and if that court had such jurisdiction of the *res* before appeal that no tribunal of co-ordinate jurisdiction could disturb it, for a like reason there should be no invasion of the jurisdiction of this court.

In disposing of the third question it is sufficient to say that it is hardly possible to make a decree broader than that of the Circuit Court. It requires the receiver to take possession of the property of the oil company, and to administer and dispose of it as he sees proper. It would be improbable that the State would reap much benefit from its judgment if the receiver appointed by the Circuit

Court would exercise all of the powers and authority conferred upon him by the decree. Hence it is clear that the exercise of jurisdiction by that court will materially affect the interests of the State and the exercise of jurisdiction by this court. An examination of the authorities illustrating the question that a second receivership will be allowed by another court, in certain instances, affords no case that will justify the assumption of jurisdiction by the Circuit Court of the Eastern District in taking possession of the property in controversy. The decree of each court appointing a receiver is as broad as the other. Under each the same purposes can be accomplished, and the same protection and rights accorded; and we see no peculiar circumstances existing which would justify the interference by the Circuit Court on the ground that the proceedings as to the receivership in that court is different from the one pending in this court; nor can that decree be construed as a mere temporary expedient looking to the preservation and protection of the property during the time the case in this court is pending on appeal.

Complainant's prayer is for very enlarged orders, going to the extent of asking this court to appoint a receiver to recover and take possession of the property and mandatory injunction against the receiver Chester B. Dorchester to forthwith cease acting as receiver and to turn over and deliver to the receiver to be appointed by this court control and management of all the property of the defendant company, and an injunction enjoining and restraining the Waters-Pierce Oil Company, and its agents and representatives from selling and disposing of all or any of the property, and from removing the same out of the State of Texas pending the final disposition of this appeal. There is also a request for an order authorizing the receiver so appointed by this court, either alone or in conjunction with the State of Texas, to take all necessary and proper steps, and to file and prosecute in said receivership proceedings in the Circuit Court of the United States for the Eastern District of Texas and elsewhere, any and all suits, pleas and applications as he and the attorneys for the State may consider proper and expedient to procure the surrender of all the property from Chester B. Dorchester, or other receiver that may be appointed to act with him or as his successor.

There are only two members of this court present, the third being unavoidably absent on account of sickness, therefore, the court has been unable to agree upon the questions whether the plaintiff is or is not entitled to all of the relief asked; and if we see proper to do so, each member of the court may, in separate opinions or orally, state his views on the questions of difference. But, however, we have agreed that while the receiver Eckhardt appointed by the State court is, by virtue of the supersedeas bond, unable to take possession of the property, he is so far subject to the jurisdiction of this court, by virtue of his qualification as receiver, as would permit us to request and direct him, in conjunction with the plaintiff, the State of Texas and its attorneys, to appear before the Hon. Circuit Court of the United States for the Eastern District of Texas, and there by suit, pleas and applications urge

and insist upon the rights of the State and the jurisdiction of this court in and to and over the property in controversy, and to ask for such orders, decrees and judgments as they may deem necessary and proper, and to appeal and perfect such appeals and writs of error as they may deem proper and necessary.

In Shields v. Coleman, 157 U. S., 168; 39 L. Ed., 662, where there was a clash of jurisdiction between the State and Circuit Courts, the course here suggested was the one that was pursued in the case cited. In other words, it appears that the State receiver appeared before the Circuit Court of the United States when he was deprived of possession of the property by order of that court, and filed his motion setting up the facts entitling him to possession, which was passed upon by the Circuit Court and the relief he prayed for was denied. There was an appeal from that decree and its merits are considered in an opinion by Judge Brewer, where final relief was by the Supreme Court of the United States accorded the State receiver in accordance with the terms of his prayer.

We feel that if the distinguished judge who presides over the Circuit Court and who granted the receivership, after full consideration concludes that our views as expressed in the opinion handed down are correct, that he will readily and promptly grant such relief as the State and the receiver appointed by the State court are entitled to.

Writ of error refused.

KEY, ASSOCIATE JUSTICE.—Concurring with Chief Justice Fisher in the views so well expressed and sustained on the paramount question in this case, the writer deems it proper to reduce to writing his views upon the questions upon which we are unable to agree. Upon those questions I am of the opinion that this court has the power to appoint a receiver, and that it should do so, in view of the facts stated in the verified motion and not in any wise controverted. I am also of the opinion that this court has the power to and should issue a writ of injunction, or some other appropriate writ, against Mr. Dorchester, requiring him to surrender the property of the defendant, the Waters-Pierce Oil Company, to the receiver appointed by this court.

1. As to the first question, in the absence of statutory authority, I am not prepared to hold that the appellate courts of this State do not possess the inherent power to appoint receivers whenever such action may be necessary to a proper disposition of the litigation upon final appeal. That valuable compendium, the American & English Ency. of Law, in volume 8, page 28, states the rule upon that subject in the following language: "Every regularly constituted court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, and to prevent any abuse of its process." And the Supreme Court of the United States in Pacific Ry. Co. of Missouri v. Ketchum, 95 U. S., 23, which was pending in that court on appeal, considered an application presented for the first time in that court for the appointment of a receiver. The application was not dismissed nor refused

upon the ground that the court was without jurisdiction to appoint a receiver; and the court, speaking through Chief Justice Waite, said: "Without undertaking to decide whether a case may not arise in which we would exercise the power of appointing a receiver pending an appeal in this court, we are clearly of the opinion that we ought not to do so upon the showing made here." But, aside from the question of the general and inherent power of this court to appoint a receiver, and without committal upon that subject, the writer is satisfied that such power has been conferred, and now exists, by the second section of the Act of the Thirtieth Legislature, which was approved and became operative April 11, 1907. It is there provided "Whenever a corporation against which the State has heretofore instituted suit, or shall hereafter institute suit, for the forfeiture of its charter or cancellation of its permit, or for fines or penalties, under any law of this State, shall dissolve in this or any other State, or shall have a judgment rendered against it in this or any other State for the forfeiture of its charter, the court in this State in which such suit is pending shall appoint a receiver for the property and business of such corporation within this State, or that may come or be brought within this State during such receivership; or the court may, in any case wherein the State is suing any such corporation for the forfeiture of its charter or of its permit to do business in this State, or for fines or penalties, appoint a receiver for such corporation whenever the interests of the State may seem to require such action."

It will be observed that in framing this law, when the matter of power to appoint receivers was reached, the Legislature did not limit that power to the District Court, or any other court designated as a class, nor to the court in which the suit was instituted, but in clear and unambiguous language, conferred that power "upon *the court in this State in which such suit is pending.*" The other reference to the court thereafter made in the same sentence and authorizing the appointment of a receiver whenever the interests of the State may seem to require it, is not, in terms, limited to the trial court and is equally applicable to an appellate court. It is not denied, and must be conceded, that the case is now pending in this court, and that the State is suing a corporation for the forfeiture of its permit to do business in this State and for fines and penalties, and no other court has jurisdiction over it. Therefore this court comes within the literal terms of that portion of the statute which confers jurisdiction to appoint a receiver; and I find no reason in any portion of that law for the conclusion that the Legislature did not intend that the language referred to should have its ordinary and usual significance. On the contrary, the rule of construction prescribed by statute in this State requiring statutes to be liberally construed in order to accomplish the legislative purpose, and the legislative history of this State upon the subject to which this statute relates, and especially the manifest purpose intended to be accomplished by this statute, lead, it seems to me, to the inevitable conclusion that *it* was the intention of the Legis-

lature to confer power to appoint a receiver upon any court exercising jurisdiction over the case at the time of the happening of the contingencies referred to in the statute. It is not unreasonable to presume that the Legislature had in mind the probability that, in some instances, the contingencies referred to might arise after the case was disposed of in the trial court and was pending on appeal in an appellate court; and that, for that reason, the broad language referred to was used in order to better protect what the Legislature regarded as the interests of the State. Since 1889 the Legislative Department of this State has been enacting laws upon the subject of trusts, and each successive enactment has been an enlargement of those preceding, and they all manifest a fixed and continued purpose to control corporations and prevent them from committing acts regarded by the Legislature as detrimental to the public interest. Various other enactments of the Thirtieth Legislature disclose such purpose, but the one under consideration makes manifest an intense purpose to reach out and make available instrumentalities and powers not heretofore used for the purpose of rendering effective anti-trust legislation.

And here it is not inappropriate to quote and apply the language of Chief Justice Stayton in Galveston, H. & S. A. Ry. v. State, 77 Texas, 410: "In construing a constitution, or any other law, the object sought is the true intent of the lawmaker, which must be ascertained from the language in which the law is written, and in considering this it is always important to keep in view the object which the law maker intended to accomplish through its enactment. The more intensely the law maker may be seen to have desired to accomplish the given purpose, the more weight should be given to the language used in a law looking to that end." While this language was used in a dissenting opinion it announces rules of construction that are well settled, and that seem specially applicable in the construction of the statute now under consideration.

Hence I conclude that this court comes within both the letter and spirit of that portion of the statute referred to which confers power to appoint receivers. If such power constitutes original jurisdiction it was competent for the Legislature to vest it in this court, because the Constitution as amended in 1891 expressly authorizes the Legislature to confer other jurisdiction, both appellate and original, upon the Courts of Civil Appeals. As published in the Revised Statutes, that provision of the Constitution is omitted, but it is, nevertheless, a part of that instrument. If the court has the power to appoint a receiver, I think the facts stated in the application and not controverted, make it appear that the interest of the State seems to require such appointment to be made.

2. By the terms of article 997 of the Revised Statutes of this State, the Courts of Civil Appeals have the power to issue writs of mandamus and all other writs necessary to enforce their jurisdiction. Of course, it can not be successfully contended that one court can issue and enforce any process against another court of co-ordinate jurisdiction and control its official action; but when a

court goes beyond the limits of its jurisdiction, and undertakes to do that which it has no power to do, such action is null and void; and it is for this reason and upon this ground that I hold that this court can properly issue an injunction against Mr. Dorchester. Authorities cited in the main opinion of Chief Justice Fisher satisfy my mind that this court had jurisdiction of the property of the defendant Waters-Pierce Oil Company, and that that property was *in custodia legis* when the judge of the Circuit Court of the United States attempted to appoint Mr. Dorchester receiver of that property; and, such being the case, the authorities referred to and many others, establish the proposition that the Federal Court at that time had no power to appoint a receiver for the property, and that the alleged appointment of Mr. Dorchester was and is absolutely null and void. My views on that subject can not be better expressed than by borrowing the language of the Supreme Court of the United States in Covell v. Heyman, 111 U. S., 176:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity with perhaps no higher sanction than the utility which comes from concord; but between State courts and those of the United States it is something more. It is a principle of right and law and, therefore, of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void."

As I understand the law, whenever an alleged official act is in excess of power and utterly without authority, such act can confer no power or right upon any one. Hence I am of the opinion that as Mr. Dorchester's alleged appointment as receiver is absolutely null and void, it is competent for this court, upon a proper showing, to issue a writ of injunction against him. Such writ would not run against him as receiver of the property, acting under the authority of the Federal Court, but as an individual, acting without authority. Therefore if this court should appoint a receiver to hold and preserve the property while the case is on appeal, I think it would be proper, if it became necessary, to issue a writ of injunction, or any other appropriate writ, to enable such receiver to secure and retain possession of the property.

In conclusion, it is not inappropriate to say that we have dealt with this delicate matter upon the assumption that the Honorable Judge of the Circuit Court of the United States, in dealing with it, acted upon no other motive than a high sense of official duty, and the matter has been dealt with in this court upon the same exalted plane. Nevertheless, being of the opinion that the Honorable

Judge referred to exceeded his powers, and that his order appointing Mr. Dorchester receiver conferred no authority upon the latter, and that Mr. Dorchester's conduct in taking possession of the property for the purposes stated in the application under consideration, constitutes an invasion of the jurisdiction of this court, I believe it is our duty under the circumstances disclosed, to take all necessary and proper steps to prevent its continuance.