## SUPREME FOREST WOODMEN CIRCLE v. CITY OF BELTON.
### No. 7960.

Court of Civil Appeals of Texas. Austin.

Nov. 15, 1933.

Rehearing Denied Dec. 13, 1933.

Thos. C. Hall, of Temple, for appellant.

Wesley Dice, of Belton, for appellee.

BAUGH, Justice.

This case arose as follows: In 1916 the city of Belton duly issued $40,000 in waterworks bonds, now owned by appellant, and levied a tax of 6.87 cents on the $100 valuation to provide interest and sinking fund for payment of same. At that time the total assessed valuation of property in said city was fixed at $4,763,000. Issuance of additional bonds and warrants increased said city's indebtedness until at the time of trial hereof it aggregated $750,000. Meantime property valuations, as shown by the tax rolls of said city, had decreased to $2,237,835 in 1931, and to $1,959,637 in 1932. The city adopted a charter under the Home Rule Amendment to the Constitution, art. 11, § 5, and in 1919 amended same to provide a maximum city tax limit of $1.90 on the $100 valuation, that being the present rate, such taxes to be divided between the "General Fund" and the "Interest and Sinking Fund."

The interest on the bonds owned by appellant, evidenced by coupons, was payable semiannually, the sum of $1,000 maturing January 10th and July 10th of each year. The city defaulted in the payment of the interest due on January 10, 1932, July 10, 1932, and January 10, 1933, and appellant brought this suit thereon. Meantime, however, numerous creditors of the city, including appellant, had, prior to the filing of this suit, brought six separate suits against the city upon obligations held severally by them, in the federal District Court. These cases were consolidated in one suit, judgment rendered in favor of each plaintiff therein, including appellant, establishing the amounts of their respective past due obligations, on which the city had defaulted since 1923; and in June, 1930, the federal court granted a mandamus against the city of Belton and its respective officers, commanding them to each year assess the taxable property of the city of Belton at its full fair market value; to levy a tax thereon in the sum of $1.90 on the $100 valuation, same being the charter limit, "for the purposes of paying judgment indebtedness and to pay the interest and provide a sinking fund for the retirement of the outstanding obligations of the City of Belton." This decree also adjudged all creditors of the city to be on a parity, whether bondholders or warrant holders, and regardless of the time the indebtedness was incurred; that payments be made by the city, where some creditors had already been paid more relatively than others, so as

to bring all creditors on a parity as of January 1, 1924; that after that had been done, thereafter all payments by the city be made ratably to all creditors in proportion to the amount of the interest charge on obligations held by each; and that, if any tax money then remained, that same be applied to payment of the past due principal of such obligations or to the creation of a sinking fund. The court further decreed that the current expenses necessary for the operation and maintenance of the city government, economically administered, have priority over claims of creditors; that a sufficient portion of the tax levy be set apart each year to the general fund for that purpose; and that the remainder, up to the $1.90 maximum authorized by the charter, be paid to creditors as directed in the decree. Writ of mandamus was directed to issue to city officials to carry out the provisions of such decree, and the cause ordered to remain on the docket, the court expressly retaining jurisdiction over the subject-matter of the suit to enter such further orders in the future as might be necessary until all such judgments and the indebtedness evidenced thereby should be fully paid and satisfied.

In the instant case in the state court, in addition to seeking judgment for the amount of its past due interest coupons, appellant also prayed for mandamus to compel the city of Belton to transfer from its general fund to its interest and sinking fund the sums of $2,800 for each of the years 1931 and 1932, same to be taken out of that portion of its tax money set aside for its operating expenses of the city government; for an injunction to restrain the city and its officers from using such $2,800 of its general fund for each of said two years to pay operating expenses of said city government; for mandamus to compel the city officers, in the event the general funds were inadequate to pay said $2,800 for each of said years, to levy a sufficient tax for 1933 and subsequent years to make such payments; for an injunction commanding the city officials to hold intact the general fund for 1931 and 1932 until the interest and sinking fund be replenished sufficiently to take care of the particular bonds held by appellant; and that appellee and its officers be restrained from diverting any of its taxes to any other fund until sufficient interest and sinking fund be provided to care for the bonds held by appellant.

The appellee, city of Belton, plead in abatement of appellant's suit the judgment of the federal court above set out, which plea was overruled and error cross-assigned by appellee. And in answer to the merits, appellee set up the judgment of the federal court, pleaded the general condition of the city as above outlined, that its maximum tax limit under its charter was $1.90 on the $100 valuation; that the operating expenses of the city for 1931 and 1932 required that a tax levy of $1.05 and $1.15, respectively, to set aside for that purpose; and that the remainder of its taxes up to the $1.90 limit were insufficient to pay the interest on its outstanding obligations.

Trial was to the court without a jury. The trial court rendered judgment for appellant for the amount of its past due interest coupons, found that the $1.05 tax levies for 1931, and $1.15 for 1932, were necessary for the operating expenses of the city government and should have priority over payment of bonded indebtedness of the city; and denied the mandatory and injunctive relief prayed for; from which judgment this appeal is prosecuted.

Appellant's assignments, without detailing them here, in effect challenge as error the action of the trial court by separate assignments in refusing it relief in the respects asked for. There is no controversy over the facts. The statement of facts is agreed to. The record shows that all the tax money raised in 1931 and 1932, other than that used for operating expenses of the city government, was paid out on judgments against the city upon obligations accruing prior to 1927, and/or for the purposes of placing all creditors of the city on a parity as directed by the decree of the federal court; that judgment creditors have not yet been brought on a parity with each other; and that practically all interest which had accrued on the city's obligations for the years 1928, 1929, 1930, 1931, and 1932 is still in arrears and unpaid.

The judgment for appellant in the federal court for past due interest for the years 1924, 1925, and 1926, on the same bonds involved in this suit, was rendered on December 13, 1926, for $5,000. In that suit appellant joined as plaintiff with other plaintiffs, including the Harris Trust & Savings Bank, which likewise recovered a judgment against the city for $14,753.27, on indebtedness held by it. Appellant's judgment in the federal court was paid as follows: $4,027.50 on January 2, 1927, and $1,575 on June 18, 1929, and a release thereof by appellant filed in the federal court. Meantime, however, and before appellant's judgment was fully satisfied, the Harris Trust & Savings Bank, on September 10, 1927, but not joined by the Woodmen Circle, on its own behalf applied to said federal court for a writ of mandamus to reapportion the tax levy of the city of Belton. This application was consolidated with several other suits by creditors then pending, and the decree entered as hereinabove set out.

■ We shall not undertake to discuss the several contentions made by appellant and ably presented. There can be no gainsaying the duty of the city under the Constitution, the statutes, and its charter to levy annually a sufficient tax to provide for the payment of interest on all of its bonded indebtedness, and the creation of an adequate sinking fund.

But it is obvious from the facts stated that it was impossible for the city of Belton, with its assessed valuation reduced more than half, with a tax limit of $1.90 on the $100 valuation, and with $750,000 outstanding indebtedness, to do so and have anything at all left to pay the necessary operating expenses of its city government. This situation precipitated numerous suits by creditors in the federal court. That court, as clearly disclosed by its decree, brought into exercise not only its jurisdiction over the claims presented, but also over the taxing power of the city both as to the levy of taxes up to the charter limit, and as to the expenditure of the taxes collected for the use and benefit of all creditors alike. That court also expressly retained a continuing jurisdiction over that subject-matter to enforce its decree from year to year. The relief sought by appellant in the state court, except in rendering judgment for the amount of appellant's past due indebtedness, which the District Court did, would clearly have been an invasion of the jurisdiction of the federal court, and an interference with its decree. To that extent, therefore, appellee's plea in abatement should have been sustained.

■ It is now well settled that, when a court of competent jurisdiction has acquired jurisdiction of a cause for one purpose, it will retain jurisdiction as to all questions properly involved. It is not contended that the federal court did not have jurisdiction over the parties and the subject-matter involved in that suit. Consequently, as is apparent from the decree of the federal District Court, most of the issues presented here by appellant were litigated in that suit and the state court could not interfere with that jurisdiction by injunction or otherwise. Waters-Pierce Oil Co. v. State, 47 Tex. Civ. App. 162, 103 S. W. 836; Cleveland v. Ward, 116 Tex. 1, 285 S. W. 1063; Barrier v. Lowery, 118 Tex. 227, 11 S.W.(2d) 298, 13 S.W.(2d) 688; State v. Epperson (Tex. Com. App.) 42 S.W.(2d) 228; 15 C. J. 1161, 1177; 11 Tex. Jur., 725.

■ Nor do we sustain appellant's contention that it was not bound by that judgment because not a party to the application of the Harris Trust & Savings Bank to have the federal court direct the levy of the city tax and allocate its expenditure. Appellant's judgment against the city had not been fully satisfied when this application, which inured to the benefit of all creditors alike, was filed. Whether appellant was charged with actual notice of such filing is, we think, immaterial. Neither the pleadings of appellant nor those of any other plaintiff in the federal court suit appear in this record. We cannot determine,

therefore, just what relief was sought by the respective parties. It is manifest, however, that the entire taxing power of the city, and the proper expenditure of all taxes collected, was the subject-matter over which the federal court exercised its jurisdiction. While no receiver for the city was appointed, the proceeding was in the nature of a receivership for the benefit of all creditors, and the federal court decree so ran, but left the administration of the city's affairs in the hands of its own officials, as limited and directed by the decree of that court. That decree, therefore, clearly controlled the funds from which appellant's bonds must be paid, and appellant's recourse for any modification thereof is to that court, not to the state court as here attempted.

There is no contention made here that the $1.05 and $1.15 levy by the city for 1931 and 1932, respectively, and set apart to the general fund was excessive or unnecessary. Nor do we find it necessary to pass upon the contention urged by appellant that the city should apply its entire tax collections, if necessary, first to the payment of its debts before it could set apart anything to its general fund for operating expenses. That matter was clearly litigated in the federal court, and, so far as the record shows, no appeal was taken from that judgment.

■ Appellant also contends that before the city can legally retain a sufficient portion of its taxes to pay its necessary operating expenses, with outstanding debts unpaid, it must assess and collect a tax up to the constitutional limit of its taxing power, that is, $2.50 on the $100 valuation, and not limit itself to the $1.90 rate fixed in its charter. The $2.50 rate prescribed by the Constitution and the statutes is but a maximum beyond which the city cannot go. The actual rate fixed by the city charter is one left expressly to the electorate of the city itself and cannot legally be increased by any other power. It thus becomes a matter for the exercise of the political power of that electorate, which the courts cannot supplant, and all purchasers of its bonds do so with notice of that limitation upon the exercise of the taxing power of the city.

The trial court rendered judgment in favor of appellant for the amount of its past due interest coupons. As to this the city makes no complaint. While we think the trial court should have sustained appellee's plea in abatement as to the other relief asked for by appellant, it was denied after a hearing, and the result is the same. The trial court's judgment is therefore affirmed.

Affirmed.